Henry ABALOS, Petitioner,

v.

OIL DEVELOPMENT COMPANY OF
TEXAS, Respondent.

No. B–5602.

Supreme Court of Texas.

Nov. 24, 1976.

Warren Burnett Associated, Richard J. Clarkson, Odessa, for petitioner.

Gibson, Ochsner, Adkins, Harlan & Hankins, S. Tom Morris, Amarillo, for respondent.

GREENHILL, Chief Justice.

The plaintiff, Henry Abalos, an employee of Ruthco Company, brought suit against the defendant, Oil Development Company of Texas. The suit was for personal injuries sustained by Abalos while working for Ruthco on the defendant's oil and gas lease. The plaintiff's hands and arms were caught in the revolving part of a pump used to bring oil to the surface. The pump and its base were being installed by the Ruthco crew at the time of the accident, and it was being run at the request of the foreman of Ruthco's crew. Abalos realized the danger of working so near the operating pump. His contention is that an employee of the defendant who started the pump at the request of the Ruthco foreman and who was watching the work of the Ruthco crew owed him a duty to warn him, or to stop the pump, particularly under the doctrine of discovered peril.

At the first trial, the district court entered a summary judgment for the defendant. This was reversed by the Court of Civil Appeals, one justice dissenting. 491 S.W.2d 482. We refused the application for writ of error with the notation of no reversible error.

Upon this trial, the district court overruled the motion for summary judgment; and after a trial upon the merits, granted the defendant's motion for an instructed verdict. The trial court's judgment also denied the subrogation claim of intervenor, Texas Employers Insurance Co. who apparently had made compensation payments to Abalos as an employee of Ruthco. The Court of Civil Appeals affirmed, one justice dissenting. 526 S.W.2d 604. We affirm.

The defendant oil company owned several oil leases in Yoakum County. Located thereon were many pumping wells. One of its employees, Curtis Ray Morgan, was generally in charge of several of the leases, the pumps thereon, and their engines. The engines which turned the pumps used natural gas for their fuel. Morgan was called a "pumper."

Someone from the defendant company's office determined to place a larger pump and a larger base over one of its wells in Morgan's area. It contracted with Ruthco to remove the old concrete base and pumping unit, and to furnish and install a larger base and pumping unit. The defendant's pumper, Morgan, did not order the work, and his duties did not include any construction on the leases. There is no evidence that Morgan either told the Ruthco employees what to do, or that he had any authority to do so. Ruthco was an independent contractor.

Ruthco's crew consisted of a field foreman, Jess Phillips, and three other men including the plaintiff, Henry Abalos. The crew took their orders from Phillips, who said that he and his crew would attempt to correct anything Morgan found to be wrong with the new installation.

Before the accident in question, the pump engine had been shut down and its gas line disconnected. The Ruthco crew, with no employee of the defendant being present, undertook the work. After removing the former concrete base and pump, the crew enlarged the hole in the ground to be occupied by the new prefabricated concrete base. Dirt which was removed was piled nearby. The new base was put in its place by the Ruthco crew which installed and aligned the new pump over the hole.

Ruthco's remaining duties were to replace the dirt around the new base and to be sure that the base was level and steady. Then the Ruthco crew would replace the dirt with shovels and pack the dirt by stomping it. To determine whether the newly installed base and pump were steady and would remain so, the Ruthco foreman wanted the pump reconnected and started and to run for a period of time.

Phillips, the Ruthco foreman, testified that they were about through with their operations when Morgan, the defendant's pumper, drove up. Abalos testified that Phillips had hooked up the bridle of the motor. Phillips testified that "we" rigged up the mechanism, the weights, rods and bridle. Phillips testified that without being asked, Morgan connected the gas line. Abalos testified that Phillips told Morgan, "I am ready to start it up," and to start the engine which operated the pumping unit so that he could determine whether the base and unit were level and steady.

The one cylinder engine had to be started like an "old Model T Ford"—it had to be hand cranked. Phillips testified that these are sometimes hard to start, and that "it is a lot easier for him (Morgan) to start it than us." While the motor operated on natural gas, gasoline was sometimes necessary to prime or start the engine. Morgan did crank and start the engine. There is a valve to turn the gas supply on or off. Phillips testified it was his practice to ask the pumper to start the engine and that he would have tried to start the motor if Morgan had not. Phillips was asked, at another place in the record, what he would have done if Morgan had refused to start the motor. He said, "Well, I would have called the office and told them they wouldn't start the engine. We would just have to leave her down." Abalos testified that he asked Phillips and Morgan not to start the pump. They denied this, and Abalos worked with the pump moving.

As stated, the defendant's pumper, Morgan, arrived when the Ruthco crew had

rigged up the pumping mechanism and was almost, but not completely, finished. He voluntarily hooked up the gas line; and at Phillips' request, started the motor, and the pump began to operate. Abalos testified that he and the others stood around 2 to 4 minutes "to see if it was going to set level," —that this was a common practice. Phillips then told them, "Now let's fill her in."

Thereupon Phillips, Abalos, and the others began to shovel the dirt back and to stomp it. They had thus worked for 3 or 4 minutes when the accident occurred.

Morgan meanwhile was washing his hands and was preparing to leave to attend to some other duties. He told Phillips that he had to go, that he would throw the motor out of gear, and that Ruthco's man could throw it back in gear when they were finished. Morgan testified that Phillips said that no, he wanted it to run. This was confirmed by Phillips who testified that thereafter, he paid no more attention to Morgan. Phillips asked Morgan if he wanted to leave the unit pumping when we (the Ruthco crew) are through. Phillips testified that "He (Morgan) said 'yes.' So we (Ruthco) left it pumping, or was going to leave it pumping; still pumping while we back filled." Asked what Morgan was doing while they were working, Phillips testified that all Morgan had to do was "just stand and watch."

Phillips testified that it was his custom to leave the pump running until he was satisfied with the work. He further testified that at the time of the accident, the Ruthco job had not been finished, and that he, Phillips, had not relinquished control over the work to anyone.

The pump has a long overhead beam and a head at the end that sometimes is referred to as a horse's head. Attached to the beam, and below it, is an arm which is attached to a crank and the revolving mech-

anism to which were attached two large semicircular iron counterweights. It takes the revolving parts, including the counterweights, 6 to 10 seconds to make a full revolution. Stated differently, it revolves 6 to 10 times per minute. It was "going about medium" at the time of the accident. Phillips thought it was going at about 8 turns per minute, which would make each turn a little over 7 seconds.

The plaintiff, Abalos, had replaced some dirt around the base and was using one foot to stomp it around the moving pump. As he worked, his hands were seen to be extended upward. At this time, the pumper, Morgan, was standing by observing. He was some 25 feet from the controls of the motor. He testified that he saw plaintiff's left arm go over toward the running pump and thought to himself "that's bad business" because the arm of Abalos was in a dangerous position, and Abalos did not seem to be aware that he was sticking his arm into the machinery. Morgan said he was tempted to say something to him or go to turn off the machinery, but then took no immediate action. Asked if he thought to disengage the motor at that instant, he testified, "No sir, I had done asked the pusher (Phillips) about turning it off." Asked why he didn't yell at Abalos if he thought it was dangerous, he testified, "Well, I just didn't," and "I just didn't have time to yell at him."

At about the time Morgan "started to holler" at the plaintiff, the revolving counterweight caught the plaintiff's left arm and then his right arm. Morgan then ran for the brake and the clutch. He disengaged the clutch to keep the unit from pumping, and "pulled the brake off." This was not a dangerous thing for Morgan to do. The pumping unit had not made a complete turn (6 to 10 seconds) by the time it was stopped by Morgan. It had gone about a half a turn.[1]

---

1. The evidence is that the revolving parts of the pump took about 8 seconds to make a full rotation, and that it would have taken Morgan 3 seconds (after realization) to move the 25 feet to the controls. Phillips testified that if Morgan had not disengaged or stopped the revolv-ing mechanism when he did, i. e., before a full revolution of the pump, the plaintiff, Abalos, would probably have been killed. He testified that there is no doubt in his mind that Abalos would have been dead.

There is a good deal of testimony about the revolving counterweights and the mechanism being completely open and obvious. Abalos had been in the oil fields over 9 years and had seen a great many similar pumping units. He testified that he realized the danger and that he had full knowledge that he had to be careful or he might get caught and be hurt. He could not remember why he got so close to the moving weights. Our opinion, however, is not based on the "no duty" concept attendant to the encountering of an open and obvious danger.

No dangerous conditions existed on defendant's premises when Ruthco and its crew, including Abalos, came upon them to do their work. There is no testimony that an ordinary pumping oil well, such as the one in question, is an inherently dangerous instrumentality or would constitute a dangerous activity upon the premises. No mechanical defects were alleged, and there were no concealed dangers.

■ As this court said in *Coleman v. Hudson Gas and Oil Corporation*, 455 S.W.2d 701 (Tex.1970), any plaintiff must prove the existence and violation of a legal duty owed to him by the defendant to establish tort liability. The threshold question, therefore, is whether Morgan was under a duty to Ruthco's employee, Abalos.

■ At Phillips' request, and in order to enable Ruthco to complete its job, Morgan connected the gas line, cranked the motor, and put the motor "in gear" so the pump would operate. He told Phillips he had to leave, and offered to throw the motor out of gear (leave the motor running, but stop the operation of the pump); but Phillips wanted the pump left operating. So this was done. Morgan was prepared to leave, with the work and the activity under Phillips' and Ruthco's control. Had Morgan left the site before the accident, his employer would not have been liable for the injury to Abalos. The entire activity was under the direction and control of Ruthco and its foreman, Phillips.

■ There is some testimony from Abalos that he requested Phillips and Morgan not to start the engine. But it is not contended that the starting of the motor by Morgan at Phillips' request was itself the cause of the injury to Abalos. Abalos was completely familiar with such pumps, and all parties stood aside for a period of time before any further work was done to see that the base and pump were level. There was no request to turn the motor off. And Abalos knew the motor was running when he and the others shoveled dirt at the base of the pump and packed it with their feet. The basis of our holding on this point is not that Abalos assumed the risk,[2] but that as a matter of law, the starting of the motor was not negligent conduct on the part of Morgan or the proximate cause of the injury to Abalos.

■ Again, referring to our opinion in *Coleman v. Hudson Gas Co.*, cited just above, the occupier is not an insurer, and as a plaintiff in any tort action, the plaintiff must prove the existence of a duty and a violation of that duty.[3] And where the activity is conducted by, and is under the control of, an independent contractor, and where the danger arises out of the activity staff, the responsibility or duty is that of the independent contractor, and not that of the owner of the premises. *Shell Chemical Company v. Lamb*, 493 S.W.2d 742 (Tex.

**2.** The defense of volenti, a voluntary assumption of the risk in the ordinary negligence case, was abolished. *Farley v. M M Cattle Co.*, 529 S.W.2d 751 (Tex.1975). The court, however, was careful to state that "henceforth in the trial of all actions based on negligence, *volenti* . . . will no longer be treated as an issue." 529 S.W.2d at 758. This case was tried and decided by the Court of Civil Appeals before *Farley*. *Farley* did not speak to "no duty." Neither does this opinion deal with the "no duty" concept as it relates to "open and obvious" danger which have been related to the concept of assumption of the risk. We do not reach that question. See *Lower Neches Valley Authority v. Murphy*, 536 S.W.2d 561 (Tex. 1976).

**3.** And again, we are not talking about negating "no duty" in the concept of the assumed risk cases such as *Halepeska v. Callihan Interests, Inc.*, 371 S.W.2d 368 (Tex.1963).

1973); *Pence Construction Corp. v. Watson*, 470 S.W.2d 637 (Tex.1971); *Hailey v. Missouri K & T Ry.*, 70 S.W.2d 249, Tex.Civ. App.1934, writ refused.

■ Granted that Morgan, who arrived after the Ruthco crew had reassembled the pumping unit, connected the gas line and, at the request of Phillips, started the engine and pump, he was thereafter an observer. He stood aside as he was expected to do, and Phillips was in control of the entire operation. And, when Morgan needed to leave, he offered to take the pump "out of gear." but Phillips wanted the pump to continue to run. It therefore, as a matter of law, was not negligent conduct on Morgan's part not to stop the motor before he left, or planned to leave. Stated differently, Morgan, and his employer, the defendant oil company, were not under a duty to supervise the activity or Ruthco's employees or to operate the motor while the activity of Ruthco was still in progress.

This brings us to the contention of Abalos that Morgan's employer should be liable because Morgan discovered the peril of Abalos and did not warn Abalos or run quickly enough to stop the pump.

■ "Discovered peril" was adopted by this and other courts to remove the harshness of the absolute bar of contributory negligence. A person or a company operating, and in control of a locomotive or an automobile, could not with impunity run into or over a person in peril, even though the person in peril was where he or she was because of his or her own contributory negligence. Contributory negligence was not, under the circumstances, a defense; and the operator was under a continuing duty to avoid striking the person up to the point of impact if he could do so with safety and in time to avoid the injury. The Legislature of Texas has now abolished contributory negligence as an absolute bar and has substituted the doctrine of comparative negligence. It is therefore questioned whether the doctrine of discovered peril has survived, or should survive, the adoption of comparative negligence. *Comment,* 6 Tex-

as Tech Law Review 131 (1974). It is not necessary to decide that question here.

■ Assuming that the doctrine of discovered peril is still a viable doctrine, its basis is that one in control of a vehicle, engine, or other instrumentality owes a duty not to direct, or use, it to injure a person in peril though the peril of the person is due to contributory negligence.

■ On the same day in March of 1942, this Court handed down two decisions. Both involved questions of duty to persons in peril. They reached different results as to liability. It may therefore be safely assumed that the Court deliberately intended the results reached in the two cases. They were *Buchanan v. Rose*, 138 Tex. 390, 159 S.W.2d 109; and *Turner v. Texas Co.*, 138 Tex. 380, 159 S.W.2d 112.

In *Turner*, the plaintiff started his truck and negligently (without keeping a proper lookout for traffic) drove into the traveled portion of the highway. Though there was good visibility, and time and room to maneuver, the driver of the Texaco truck crashed into the plaintiff who had negligently gotten himself in a position of peril. This court there laid down the present rules for liability under the doctrine of discovered peril. The operator of the moving vehicle, and his employer, were under a duty not to injure the plaintiff, assuming the finding of the facts set out in the opinion.

In *Buchanan*, the truck driven by an employee of the defendant passed over a weak bridge. Its rear wheels crushed a part of the bridge. The resulting defect caused the bridge to be dangerous to traffic. A witness in a car behind the truck overtook the truck and asked the defendant's driver if he were not going to put up a warning. The driver did not. It was pointed out that defendant's truck was not overloaded, was not being operated in a negligent manner, and that the weakness of the bridge existed before defendant's truck passed over it. The bridge was not caused to become defective because of any negligence on the defendant's part. The defendant's truck driver was, however, an "actor" in the sense

that he had something to do with the danger;—his truck had activated the cave-in, though not as a result of any negligence on his part. Six days later, the plaintiff's car struck the defect in the bridge, and injury resulted. On the same day it decided *Turner* and the discovered peril doctrine, this Court held that as a matter of law, the employer of the truck driver in *Buchanan* was not liable. He owed a moral duty, but not a legal duty, to the plaintiff. Chief Justice Alexander, in writing *Buchanan*, distinguished between people who create a dangerous condition and those who do not; and that, speaking in terms of duty: ". . if a party negligently creates a dangerous situation it then becomes his duty to do something about it . . .. On the other hand, it may be said generally, as a matter of law, that a mere bystander who did not create the dangerous situation is not required to become the good Samaritan and prevent injury to others."

*Buchanan* has not been overruled; and while we are not necessarily prepared to extend it to cover all the situations used as illustrations by text writers who would require assistance or to protect persons in peril,[4] we do regard *Buchanan* as applicable here. By the same token, we do not regard *Turner* as applicable here. As discussed in depth above, the defendant did not create the dangerous condition or activity. The entire operation, including the operation of the pump, was at the time under the direction and control of an independent contractor, Ruthco.

We, therefore, are of the view that the case has been correctly decided by the courts below; and the judgment of the court of civil appeals is, accordingly, affirmed.

Concurring opinion by POPE, J.

Dissenting opinion by REAVLEY, J., in which SAM D. JOHNSON, J., joins.

POPE, Justice (concurring).

I concur in the holding of the court that Morgan owed no duty to Henry Abalos under the doctrine announced in *Buchanan v. Rose*, 138 Tex. 390, 159 S.W.2d 109 (1942). Two other significant points are squarely presented by this appeal and they should be decided. Plaintiff Abalos says that the motion for instructed verdict should have been denied under his proof that the defendant had the last clear chance, and he says also that the no-duty doctrine was no basis for instructing a verdict against him. I would abolish both the last clear chance and the no-duty doctrines and return the practice to issues of negligence and contributory negligence, free of these confusing satellite issues.

*Last Clear Chance*

The doctrine of last clear chance is a part of the law's thrust and parry arising from the merciful desire to ameliorate the harshness of the absolute defense of contributory negligence. *Davies v. Mann*, 152 Eng.Rep. 588 (1842). It applies when both parties are negligent, but the defendant's negligence occurs at a later point in time. *Gentry v. Southern Pacific Company*, 457 S.W.2d 889 (Tex.1970); *Safeway Stores, Inc. v. White*, 162 Tex. 473, 348 S.W.2d 162 (1961); *R. T. Herrin Petroleum Transport Co. v. Proctor*, 161 Tex. 222, 338 S.W.2d 422 (1960); *Ford v. Panhandle & Santa Fe Ry. Co.*, 151 Tex. 538, 252 S.W.2d 561 (1952); *Sisti v. Thompson*, 149 Tex. 189, 229 S.W.2d 610 (1950); *Turner v. Texas Co.*, 138 Tex. 380, 159 S.W.2d 112 (1942); *Wilson v. Southern Traction Co.*, 111 Tex. 361, 234 S.W. 663 (1921); *Pecos & N. T. Ry. Co. v. Rosenbloom*, 173 S.W. 215, reh. den., 107 Tex. 291, 177 S.W. 952 (1915); *Texas & P. Ry. Co. v. Breadow*, 90 Tex. 26, 36 S.W. 410 (1896); *Houston & Texas Central R. R. Co. v. Smith*, 52 Tex. 178 (1879). I would overrule all of these cases insofar as they recognize the last clear chance doctrine. Some old Texas cases retain the last clear chance

---

4. Prosser, Law of Torts 340 et seq. (4th ed. 1971); 2 Harper & James, The Law of Torts 1046 et seq.

doctrine in spite of the comparative negligence practice which article 6440, Tex.Rev.Civ.Stat.Ann., made applicable to railroads. *Pecos & N. T. Ry. Co. v. Rosenbloom*, 173 S.W. 215, *reh. den.*, 107 Tex. 291, 177 S.W. 952 (1915), *rev'd on other grounds*, 240 U.S. 439, 36 S.Ct. 390, 60 L.Ed. 730 (1916); *Pecos & N. T. Ry. Co. v. Welshimer*, 170 S.W. 263 (Tex.Civ.App.1914, no writ). I would also overrule those cases.

Texas adopted the doctrine of last clear chance in 1879 in *Houston & Texas Central R. R. Co. v. Smith*, 52 Tex. 178. The court in that early case made the interesting suggestion that a system of comparative negligence would render the last clear chance doctrine unnecessary. The court rejected this suggestion because comparative negligence was not a viable alternative in 1879. This present case was also not tried by comparative negligence. Article 2212a, Tex.Rev.Civ.Stat.Ann. Of course, under a system of comparative negligence, the reasons for a doctrine of the total defeat or total victory such as last clear chance no longer exist. A number of states have abandoned the last clear chance doctrine by statute or decision, believing that comparative negligence and the last clear chance doctrine are incompatible. Ark.Stat.Ann. §§ 27–1763 to 27–1765 (Supp.1973); *Kaatz v. State*, 540 P.2d 1037 (Alaska 1975); *Burns v. Ottati*, 513 P.2d 469 (Colo.App. 1973); Conn. Laws 1973, c. 622 Sec. 1(c); *Hoffman v. Jones*, 280 So.2d 431 (Fla.1973); *Loftin v. Nolin*, 86 So.2d 161 (Fla.1956); *Cushman v. Perkins*, 245 A.2d 846 (Me. 1968). Wisconsin rejected the doctrine without regard for comparative negligence. *Switzer v. Detroit Inv. Co.*, 188 Wis. 330, 206 N.W. 407 (1925). *See* P. W. Johnson, *The Doctrine of Last Clear Chance—Should It Survive the Adoption of Comparative Negligence in Texas*, 6 Tex.Tech.L.Rev. 131 (1974); P. Keeton, *Private Law, Torts*, 28 Sw.L.J. 1, 15 (1974).

Last clear chance is almost the last viable doctrine in Texas ancillary to the genuine issues of negligence and contributory negligence. We have already held that instructions to the jury should be substituted for the submission of: unavoidable accident and sudden emergency, *Yarborough v. Berner*, 467 S.W.2d 188 (Tex.1971); excuse, *Southern Pacific Co. v. Castro*, 493 S.W.2d 491 (Tex.1973); new and independent cause, *Dallas Ry. & Terminal Co. v. Bailey*, 151 Tex. 359, 250 S.W.2d 379 (1952); and res ipsa loquitur, *Mobil Chemical Company v. Bell*, 517 S.W.2d 245 (Tex.1975).

We abolished the separate submission of issues inquiring about voluntary assumption of risk in *Farley v. M M Cattle Company*, 529 S.W.2d 751 (Tex.1975) saying, "the reasonableness of an actor's conduct in confronting a risk will be determined under principles of contributory negligence." We abolished the false "open and obvious" special issues in *Adam Dante Corporation v. Sharpe*, 483 S.W.2d 452 (Tex.1972) and explained the correct use of that phrase in *Massman-Johnson v. Gundolf*, 484 S.W.2d 555 (Tex.1972). Instead of an independent defense to an action, the phrase "open and obvious" is merely descriptive of that state of the evidence which establishes a fact as a matter of law. When a condition is both "open and obvious," there is conclusive proof that one knew and fully appreciated a specific danger. It was in that sense that this court recently wrote in *Coffee v. Woolworth Company*, 536 S.W.2d 539 (Tex.1976). The phrase, however, has such a long history of confusion that it would be better to drop it from the practice. The state of the evidence should be discussed in terms of "no evidence," "all the evidence" or "the proof conclusively shows." The sum of all those decisions is that cases should be tried on issues of negligence and contributory negligence and should not be entangled with collateral issues. *See Mobil Chemical Company v. Bell*, 517 S.W.2d 245 (Tex.1975).

Last clear chance, as an independent doctrine, has no stronger claim for survival than the other collateral issues. It is unjust for last clear chance to completely excuse a plaintiff's negligence when assumption of risk does not defeat his cause of action. To paraphrase *Farley:* henceforth in the trial of all actions based on negligence, . . . last clear chance will no longer be treated

as an issue. Rather, the reasonableness of an actor's conduct will be determined under principles of negligence.

### No-Duty

Plaintiff Abalos insists that the court of civil appeals failed to hold that the no-duty doctrine has also been replaced by the reasonable man test of primary and contributory negligence. He says that by implication the no-duty doctrine was abolished by our decision in *Farley* which held voluntary assumption of risk was no longer a viable separate defense in a negligence case. Abalos reasons that no-duty and voluntary assumption of risk address the same issue, the defendant's duty. We have so held in a number of prior decisions, *Adam Dante Corporation v. Sharpe,* 483 S.W.2d 452 (Tex. 1972); *Scott v. Liebman,* 404 S.W.2d 288 (Tex.1966); *Ellis v. Moore,* 401 S.W.2d 789 (Tex.1966). In *McKee v. Patterson,* 153 Tex. 517, 271 S.W.2d 391 (1954), while recognizing this duplication and overlap, this court expressed the view that well-settled principles of substantive law justified the practice of distinguishing no-duty and voluntary assumption of risk:

> It would greatly simplify our procedural problems if we could follow the course suggested by the San Antonio Court of Civil Appeals in *Camp v. J. H. Kirkpatrick Co.,* 250 S.W.2d 413, writ refused, n. r. e., and let this class of cases fall into the pattern of the usual negligence case, deciding the question of negligence and breach of duty on the part of the owner by looking only to his conduct and the question of voluntary exposure to risk on the part of the invitee by looking alone to his conduct, but to do so would be to ignore the well-settled law of this state, as expressed in the cases above cited, that there is no duty on the owner of premises to take precautions to protect his invitee from dangers on the premises of which the invitee is or should be fully aware and which he voluntarily encounters. To determine the existence and the extent of the owner's duty we must therefore look not only to the conduct of the owner but to the conduct of the invitee as well. It

may well be that when we examine the conduct of the invitee for the purpose of deciding whether there has been a breach of duty by the owner we necessarily decide, as an incident thereto, the defensive issue of voluntary exposure to risk, with the result that a decision of the first question follows a decision of the second automatically. . . . But this resulting intermingling of the two problems would not justify our rewriting the substantive law of the state to impose a duty where it is so firmly established none exists. Even if voluntary exposure to risk be not pleaded as a defense the duty question would still be present. On the other hand, the problem being presented by the facts so as to raise the question of "no duty", there would seem to be little or no place in the case for the defense of voluntary exposure to risk except, perhaps, to highlight the problem.

The elements which overlap between the so-called no-duty doctrine, voluntary assumption of risk, contributory negligence, and the nebulous open and obvious idea were sorted out in *Halepeska v. Callihan Interests, Inc.,* 371 S.W.2d 368 (Tex.1963). At that time, as was the case ten years earlier when *McKee* was before this court, there was still some thought that the confusion could be eradicated. No-duty was explained in *Halepeska:*

> The "no duty" doctrine is this: the occupier of land or premises is required to keep his land or premises in a reasonably safe condition for his invitees. This includes a duty of the occupier to inspect and to discover dangerous conditions. *Smith v. Henger,* 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R.2d 853 (1950); *Genell, Inc. v. Flynn,* [163] Tex. 632, 358 S.W.2d 543 (1962). His duty is to protect his invitees from dangers of which he, the occupier, knows, or (because of his duty to inspect) of which he *should* know in the exercise of ordinary care. If there are dangers which are not open and obvious, he is under a *duty* to take such precautions as a reasonably prudent person would take to protect his invitees

therefrom or to warn them thereof. *But if there are open and obvious dangers of which the invitees know, or of which they are charged with knowledge, then the occupier owes them "no duty" to warn or to protect the invitees. This is so, the cases say, because there is "no duty" to warn a person of things he already knows, or of dangerous conditions or activities which are so open and obvious that as a matter of law he will be charged with knowledge and appreciation thereof.*

\* \* \* \* \* \*

So in a suit by an invitee against the occupier, the invitee must not only prove that he was injured as a proximate result of encountering a condition on the premises involving an unreasonable risk of harm, but he must also prove, as part of the plaintiff's case, that the occupier owed him a *duty* to take reasonable precautions to warn him or protect him from such danger, *i. e., the plaintiff must negative "no duty." This is the "no duty" referred to in the cases.* Academically, it may be a rather clumsy concept, but it is still the law. *Houston National Bank v. Adair,* 146 Tex. 387, 207 S.W.2d 374 (1948). [Emphasis added.]

The duplicating and overlapping concepts were again examined in *Adam Dante Corporation v. Sharpe,* 483 S.W.2d 452 (Tex. 1972). We included two extensive footnotes in that opinion. The first footnote shows that the practice then existing required a plaintiff to prove a defendant's breach of duty by an objective standard and that he had also to disprove his own knowledge and appreciation measured by a subjective test. Those are the no-duty issues. The defense was voluntary assumption of risk which is a slight variation of the no-duty test with a shifted burden of proof. This defense was measured by a subjective test. The defendant could go further and

defend on contributory negligence, an objective test.

The issues in *Adam Dante's* second footnote did not require the plaintiff to disprove his own knowledge and appreciation of the danger. In that slip and fall case, we suggested that the submission which omitted the no-duty issues was more appropriate than the prior submission which contained the no-duty issues. We again set forth the submission in *Adam Dante's* footnote two, which omits the no-duty issues, as the correct way for a plaintiff to try an occupier-invitee case.[1] If no-duty was not abolished in *Adam Dante,* I would expressly do so now.

The good reasons to observe stare decisis when *McKee* and *Halepeska* were decided no longer exist. Already this court has eliminated the side issues which snarl the simpler trials which employ principles of negligence and contributory negligence. More importantly, the legislature by the adoption of the comparative negligence statute has expressed an intent to eliminate collateral issues. We have now already done by our decision in *Farley v. M M Cattle Company,* 529 S.W.2d 751 (Tex.1975), what this court felt it could not do in *McKee v. Patterson,* 153 Tex. 517, 271 S.W.2d 391 (1954). Voluntary assumption of risk has been eliminated in favor of the return of occupier-invitee cases to trials by negligence and contributory negligence.

The plaintiff has the burden to prove that the defendant had a duty which he breached. We so held by our approval of Restatement (Second) of Torts, § 343 (1965). We quoted that section and approve it as the duty rule in a slip and fall case between an invitee and an occupier.

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

---

1. *Adam Dante Corporation v. Sharpe,* 483 S.W.2d 458 n. 2 (Tex.1972).

*Plaintiff's Issues*

1. Defendant created or maintained a dangerous condition (stating it) on its premises. (Objective Test)

2. Defendant knew (or should have known) of the condition. (Objective Test)
3. Negligence in some particular act or omission (failure to inspect, failure to correct, failure to warn, etc.).
4. Proximate cause.

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

The occupier is under the further duty to exercise reasonable care in inspecting the premises to discover any latent defects and to make safe any defects or to give an adequate warning.

The difference between the no-duty rule and the above Restatement rule is that the Restatement rule of section 343 does not require the plaintiff to go further and negate his own knowledge and appreciation of the danger. This problem of requiring the plaintiff to negate his own knowledge and appreciation of the danger arises from an overstatement of the defendant's duty. An illustration of this overstatement is found in *Halepeska:*

But if there are open and obvious dangers of which the invitees know, or of which they are charged with knowledge, then the occupier owes them "no duty" to warn or to protect the invitees. This is so, the cases say, because there is "no-duty" to warn a person of things he already knows, or of dangerous conditions or activities which are so open and obvious that as a matter of law he will be charged with knowledge and appreciation thereof.

A similar overstatement of the duty rule is Section 343A of Restatement (Second) of Torts (1965). We did adopt the duty rule of section 343 in *Adam Dante Corporation v. Sharpe.* We did not adopt section 343A,[2] and we do not adopt it now. This overstatement of the defendant's duty so that it looks back upon what the plaintiff knows or

does was criticized in *Camp v. J. H. Kirkpatrick Co.,* 250 S.W.2d 413 (Tex.Civ.App.1952, writ ref'd n. r. e.).

We summarized in *Camp* the many earlier cases which had been tried by the simpler negligence and contributory negligence issues. We reviewed the same cases in *Rosas v. Buddies Food Store,* 518 S.W.2d 534 (Tex.1975), as justification for abolishing voluntary assumption of risk. We again discuss some of them as reasons for the return to the reasonable man test in deciding occupier-invitee cases. These cases show that there is no better reason to retain no-duty than there was to retain voluntary assumption of risk.

*Blanks v. Southland Hotel,* 149 Tex. 139, 229 S.W.2d 357 (1950) illustrates the successful and fair trial of premises actions upon principles of negligence and contributory negligence. Plaintiff Blanks sued to recover for injuries he sustained when he fell on a dimly lighted stairway from his apartment. Defendant Hotel, charged with several acts of negligence, relied upon the defense of contributory negligence. The jury refused to find that the plaintiff was contributorily negligent in (1) failing to keep a proper lookout, (2) failing to hold onto the handrail, (3) failing to watch where he was stepping, or (4) failing to request assistance down the stairway. The supreme court ruled that the question was whether or not the evidence established contributory negligence as a matter of law but held that it did not under the record made. The case was tried on principles of simple negligence and contributory negligence without the snarling effects of no-duty, open and obvious, or voluntary assumption of risk.

*Gulf, C. & S. F. R. Co. v. Gascamp,* 69 Tex. 545, 7 S.W. 227 (1888) is another example of the trial of a case upon negligence

2. § 343 A. Known or Obvious Dangers

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.

principles even though the plaintiff knowingly encountered a specific danger. Plaintiff Gascamp approached a bridge that defendant had the duty to maintain. The bridge was out of repair and dangerous, and the plaintiff testified that he knew about the defective character of the bridge. The horse on which plaintiff was riding, dislodged a rotten plank and became frightened. This court held that the question of knowledge of the defective condition related to the issue of contributory negligence and whether that was established as a matter of law. The case is cited in *McAfee v. Travis Gas Corporation,* 137 Tex. 314, 153 S.W.2d 442, 447 (1941) for the principle that there are some circumstances in which one may as an ordinary prudent person take the risk of a known specific danger: "even where a person has knowledge, actual or imputed . . . ." The court went on to hold, however, that the trial court may find in an appropriate case as a matter of law that a person of ordinary care would not have incurred the risk. Other holdings that premises cases may be tried on principles of negligence and contributory negligence are: *Brown v. Frontier Theatres, Inc.,* 369 S.W.2d 299 (Tex.1963); *Lang v. Henderson,* 147 Tex. 353, 215 S.W.2d 585 (1948); *Walgreen-Texas Co. v. Shivers,* 137 Tex. 493, 154 S.W.2d 625 (1941); *Texas & N. O. R. Co. v. Wood,* 166 S.W.2d 141 (Tex.Civ.App. 1942, no writ); *H. E. Butt Grocery Co. v. Johnson,* 226 S.W.2d 501 (Tex.Civ.App.1949, writ ref'd n. r. e.); *Temple Electric Light Co. v. Halliburton,* 136 S.W. 584 (Tex.Civ. App.), *aff'd,* 104 Tex. 493, 140 S.W. 426 (1911); *Henwood v. Gilliam,* 207 S.W.2d 904 (Tex.Civ.App.1947, writ ref'd); *Texas & N. O. R. Co. v. Blake,* 175 S.W.2d 683 (Tex.Civ. App.1943, writ ref'd); *Northcutt v. Magnolia Petroleum Co.,* 90 S.W.2d 632 (Tex.Civ. App.1936, writ ref'd). An instructed verdict by reason of contributory negligence as a matter of law is a suitable alternative and is a simpler order than one based on principles of no-duty. *See United Gas Corporation v. Crawford,* 141 Tex. 332, 172 S.W.2d 297 (1943).

I, therefore, would hold that no-duty like open and obvious and voluntary assumption of risk should not be submitted as special issues. Nor should those doctrines be the subject of instructions to jurors. Scholars and theorists, after a lifetime of study, are unable to agree or communicate the nuances of the distinctions. It is unfair then to expect jurors to comprehend these distinctions when they, once in a lifetime, hear an instruction read which orally states the meanings of these obscure doctrines. We should not prolong the endless debates about the distinctions between subjective and objective tests of knowledge and appreciation, the changing burdens of proof on the several duplicated matters, the proof of the negative of one's own knowledge and appreciation, and the exceptions to and limitations upon these doctrines.

Efforts to clarify and explain by instructions such rules as last clear chance, voluntary assumption of risk, open and obvious, and no-duty and, at the same time, to permit their use with stated limitations or exceptions have not proved successful. Concluding that confusion lingers as long as voluntary assumption of risk survives, New Jersey abandoned its simultaneous efforts to both clarify and make limited use of the doctrine. It wrote in *McGrath v. American Cyanamid Co.,* 41 N.J. 272, 196 A.2d 238 (1963):

> Experience, however, indicates the term "assumption of risk" is so apt to create mist that it is better banished from the scene. We hope we have heard the last of it. Henceforth let us stay with "negligence" and "contributory negligence."

An instruction concerning last clear chance is also unnecessary. Trial advocacy and oral argument can invite the jurors' attention to a plaintiff's or a defendant's failure to act as a reasonable person, and such notions as last clear chance and the assumption of a known risk, or full knowledge and appreciation of a danger can be subsumed under the simpler doctrines of negligence and contributory negligence. *Kaatz v. State,* 540 P.2d 1037 (Alaska 1975).

For reasons expressed at the outset, I concur in the result.

REAVLEY, Justice (dissenting).

I would hold that Abalos has produced evidence which would warrant a jury finding that Morgan failed to exercise due care to protect Abalos from the danger of the pumping unit. Morgan represented the owner of the pump and occupier of the premises. His duty to Abalos was that owed to a business invitee. *Smith v. Henger,* 148 Tex. 456, 226 S.W.2d 425 (1950). The scope of that duty is at least as broad as is stated in § 343 of the Restatement (Second) of Torts (1965). If under all of the circumstances the occupier should realize that the condition or use of the premises involves an unreasonable risk of harm to the invitee, the occupier must exercise reasonable care to protect the invitee against the danger. If those circumstances are that a hole or cliff or pumping unit are plainly visible, the occupier may reasonably expect invitees to go safely about their business without requiring the construction of "Danger" signboards or guard rails. If the danger is not plainly visible, the occupier may discharge the requirement of due care by giving an adequate warning. In the present case we may assume that if Morgan had left the premises after starting the pump motor, the circumstances would have warranted no recovery by Abalos.

The circumstances changed, however. Morgan watched Abalos work his way into the devastating clutch of the pump. A jury could find that Morgan should have known that Abalos was totally unaware of his proximity to the pump and that Morgan should have known that Abalos would be mangled if Morgan did nothing. The jury would be entitled to find a failure to warn, under all of the circumstances, to be negligence.

I do not regard *Buchanan v. Rose,* 138 Tex. 390, 159 S.W.2d 109 (1942), as relevant. Morgan was no bystander; at all times he owed the legal duty to Abalos of occupier to invitee.

While the occupier may discharge the care required of him under one set of circumstances, a change in circumstances may require more of him. His legal duty may require more than a one-time response. Suppose the occupier carefully undertakes to give an adequate warning to a contractor on his premises by showing the foreman where all high pressure gas lines are located; the occupier fulfills the requirements of *Delhi-Taylor Oil Corp. v. Henry,* 416 S.W.2d 390 (Tex.1967), and of *Pence Construction Corp. v. Watson,* 470 S.W.2d 637 (Tex.1971). He may then retire with impunity. But suppose he does not retire. He remains on the premises and overhears workmen talking; he learns from that talk that they do not know of a gas line or have misunderstood its location. May the occupier stand by and let the workmen dig into the gas line? Of course he cannot—not without liability.

I do not regard the "control" question as an important one. The Ruthco operation or the manner in which that work was done does not rule the issue of Morgan's negligence. The pumping unit was a premises condition; if it was a danger, the occupier owed the invitee a duty to exercise due care toward its avoidance.

I agree that the issues for the jury should be negligence and contributory negligence. So much for "last clear chance" and "discovered peril" and "no-duty/assumption of risk." In the proof and contention for and against determinations of negligence, most of the same arguments (and terminology too) may be used. But these are not issues to be submitted separately to the jury, and they are not defenses to overcome adverse findings as were "assumption of risk" or "discovered peril." We go with negligence and contributory negligence (now comparative) to resolve the fault question.

I would remand this case to the trial court for that method of trial.

SAM D. JOHNSON, J., joins in this dissent.