**Elzie Ray MASON, Appellant,**

v.

**PYRAMID DERRICK & EQUIPMENT CO., Appellee.**

No. 8384.

Court of Civil Appeals of Texas, Beaumont.

March 13, 1980.

Rehearing Denied April 3, 1980.

W. E. Townsley, Beaumont, W. James Kronzer, Houston, for appellant.

Dale Dowell, Beaumont, for appellee.

DIES, Chief Justice.

Elzie Ray Mason, plaintiff below, an employee of Nicklos Drilling Company, sued Frank Nicklos, Stewart & Stevenson Oiltools, Inc., and Pyramid Derrick & Equipment Corporation, as defendants below, for personal injuries he sustained at a drilling site. Aetna Casualty & Surety Company intervened to recover its subrogation interest under the Texas Worker's Compensation suit.

Trial was to a jury which exonerated Nicklos of liability, found both Stewart & Stevenson and Pyramid liable, finding the former sixty percent negligent, and the latter forty percent negligent.

Thereafter, upon motion of Pyramid, the trial court disregarded the answers of the jury to Special Issues Nos. 16, 17, 18, and 21, and entered judgment only against Stewart & Stevenson and in favor of Mason, plaintiff.

After the entry of judgment, plaintiff settled with Stewart & Stevenson, and plaintiff has perfected this appeal solely as against Pyramid. We have nothing in our record showing the terms of the settlement between plaintiff and Stewart & Stevenson. The parties will usually be referred to in this opinion by name or as they were below.

The issues disregarded by the court were: that while the rig was in the rigging yard of Stewart & Stevenson Oiltools, Inc., Pyramid Derrick & Equipment Corporation, through its agent, servant or employee, was advised that the hinged extension had been added to the racking platform (16); that after being so advised, Pyramid Derrick & Equipment Corporation failed to take such actions as would have been taken by a reasonable and prudent person to insure a reasonably safe attachment (17); that such failure was a proximate cause of the occurrence in question (18); that the percentage of the negligence that caused the occurrence in question attributable to Stewart &

Stevenson Oiltools, Inc., is sixty percent, and that attributable to Pyramid Derrick & Equipment Corporation is forty percent (21).

Before we address plaintiff's three points of error, all of which complain of the trial court's action in disregarding the above issues, we deem it necessary to summarize the evidence produced in the trial court.

■ Answers to issues may properly be disregarded only if there is no evidence to support the answer, or if the issue is immaterial, *McClure v. Casa Claire Apts., Ltd.*, 560 S.W.2d 457 (Tex.Civ.App.—Beaumont 1977, no writ). See p. 460 and authorities cited.

Thomas E. Wood was the "derrick man" on the job in question whose duty was "[t]o trip pipe in the derrick and take care of the drilling fluid and pumps." Plaintiff was "a floor hand." Just prior to the accident, Wood was on the "monkey board," above plaintiff, "trying to latch onto a drill collar." He stepped on the "flap" which fell and hit plaintiff. It was the pipe itself, not the weld which broke.

Frank Nicklos, welded the flap for Stewart & Stevenson, as their employee, and at their rig yard. Stewart & Stevenson completely assemble and test oil rigs. His foreman told him to weld this flap (hinged extension) to the monkey board, which was already assembled. One of the Nicklos Drilling Company employees, Don, indicated where he wanted this extension installed. The witness had never worked for Nicklos Drilling Company. From time to time he saw personnel of Pyramid (but not in this particular occasion).

Dr. Hugh Walls, a metallurgist and engineer, studied photographs and a mock-up of the installation involved. It was his opinion the sleeve or extension should have been chained to another part of the rig so that, if it failed, it would not fall to the floor. The derrick man is secured by a lifeline to prevent his falling 85 feet to the floor when an accident such as this occurs. Also, this sleeve was three-quarter inch pipe which "seems pretty marginal to me."

Sylvester J. Ermis, "a service man or field man" with Pyramid whose "classification is I have been driving a company truck with a welding machine and cutting torch for years and then doing little odds and ends for them in the rig up yards." He was working in the Stewart & Stevenson yard when the rig in question was being assembled (known as Nicklos 76). It was designed by Pyramid's engineer, Paul Borg. If Stewart & Stevenson has a problem he (Ermis) may be called on to make a suggestion. If he saw something wrong, he would point it out.

Ermis was asked, "Now were you out there on the ground on the day that the decision was made to install this hinged extension near the monkey board of the Nicklos 76?" He answered:

"I was around there, sir, but not all the time. I was there off and on because I was on three separate jobs at the present time. The onliest time I was there was when they needed me they called me, the company, and if I had time I would go up there and correct the mistake."

When asked if he was present when the decision was made to install this hinged extension, he answered, "I wasn't around there, sir."

"Q. You knew it was being done?

"A. After it was being done, yes sir; after it was fabricated.

"Q. Okay, and you didn't approve of that, did you?

"A. No, sir.

"Q. It looked dangerous to you, didn't it?

"A. No, I didn't look at it that much."

He (Ermis) didn't look at it that much "because Don and Mike were in charge of that." He didn't actually see the extension until it was already on. "I don't know how it would be made, who designed it or what. If I had anything to do with the thing I would have designed it where it would stay there." He would have first gone to an engineer. A chain should have been put on it and attached to some part of the tower. But, he (Ermis) made no such suggestion.

Mike and Don are employees of Nicklos Drilling Company. The mast and monkey board had already been sold by Pyramid to Nicklos (at the time of the installation of the extension). He (Ermis) was in the yard to assist in any problems that might confront Stewart & Stevenson in the rig up.

Donald W. Helmer, a tool pusher for Nicklos said Pyramid furnished "a supervisor or engineer" to assemble the rig. His (the Pyramid man) purpose was "[t]o see that it was put together correctly and if there is any misalignment or misfitting, he knows what to do with it." During the rigging, they did run into misalignment and misfitting parts and "Pyramid took care of that." Pyramid had one person there every day, but the persons weren't the same always. When the derrick was moved to Stewart & Stevenson, he found fault with the design of the monkey board because, "[t]here was not enough standing room on it." This was discussed with Pyramid, and Pyramid "okayed adding these extensions on there that we put. . . ." He cleared the welding himself with Pyramid because "any time the buyer purchases a derrick he has got to get the okay from the manufacturer before he can weld on it."

As tool pusher or drilling superintendent, it was his responsibility to see that his men got a safe place to work and that the equipment was adequate. He decided there was not enough "floor space" on the monkey board. "I got with the Pyramid man and told him what I needed on there, then I got me a welder and told him I wanted the same width deal as this board right here, extending out where it would still leave room for the drill collar to go by."

A metallurgist, Meek, agreed the extension should have been designed to prevent its falling.

Joe Ogden, then with Nicklos Drilling Company, testified, "You know, Pyramid built the substructure and derrick and naturally they have to be there to see that it's fitted right." And further, witness Helmer stated, "they [Pyramid] okayed the welding on the monkey board. . . ." And, "the man [Pyramid's] was there every day until

the derrick was raised." The hinge and extension was "okayed by Pyramid, yes."

Frank Precht, a superintendent of Nicklos, described Pyramid's man as an "advisor."

Ermis was recalled to the stand by Pyramid and testified he had told Mike Precht and Don Helmer before the extension was put on "that wouldn't be a good idea . . if they put anything on there it would be on their own." Precht was Nicklos' supervisor of the rig. When Ermis saw the extension put on by Mike and Don, he didn't tell them how Pyramid did it (presumably safer) "because I didn't have nothing to do with that extension."

Paul Borg, Director of Engineering with Pyramid, said he knew of no one with Pyramid who approved this metal hinged extension. Ermis had no such authority. No one ever told him this hinged extension was being installed or "I would have disapproved of what was put there." It should at least have had a chain to restrain it. Along with Ermis, Pyramid had Kirth, Holman, Lee, and others, on this job. None of them had any more authority than Ermis.

Since both parties to this appeal somewhat agree that Pyramid's position is governed by *Abalos v. Oil Development Company of Texas*, 544 S.W.2d 627 (Tex.1976), we have tried to fully set out the facts of the instant case (perhaps too fully) particularly as they concern Pyramid's role and responsibilities.

We now shall try to carefully analyze *Abalos v. Oil Development Company of Texas*, supra, and attempt to determine how it governs the case we review.

In the *Abalos* case, plaintiff, an employee of Ruthco Company, brought suit against the defendant, Oil Development Company of Texas, for personal injuries sustained while working for Ruthco on defendant's oil and gas lease. Plaintiff was caught in the revolving part of a pump being installed by his employer, Ruthco. Plaintiff contended an employee of defendant who started the pump at the request of the Ruthco foreman and who was watching the work of the Ruthco crew owed him a duty to warn him or to stop the pump.

The Ruthco crew undertook the job with no employee of defendant present. When they were nearly finished, Morgan, the defendant's pumper, drove up. The Ruthco foreman asked Morgan to start the pump engine, sometimes hard to start, because " 'it is a lot easier for him (Morgan) to start it than us.' " Morgan started it up and was washing his hands to leave when the accident occurred. "He [Morgan] testified that he saw plaintiff's left arm go over toward the running pump and thought to himself 'that's bad business' because the arm of Abalos was in a dangerous position, and Abalos did not seem to be aware that he was sticking his arm into the machinery. Morgan said he was tempted to say something to him or go to turn off the machinery, but then took no immediate action."

In citing *Coleman v. Hudson Gas and Oil Corporation*, 455 S.W.2d 701, 702 (Tex.1970), the Court said: "Any plaintiff must prove the existence and violation of a legal duty owed to him by the defendant to establish tort liability." The court in the *Abalos* case said after Morgan turned on the pump he was an "observer" and thereafter: "Morgan, and his employer, . . . were not under a duty to supervise the activity of Ruthco's employees . . .." (544 S.W.2d 632).

■ In our case, however, Pyramid's employees on the rigging site were far from observers. They were there to "advise" in the rigging of this derrick as a result of a prearranged agreement. There was testimony from Nicklos' tool pusher, Helmer, that the extension was cleared with Pyramid's agents before it was put on. And though Pyramid's chief engineer says he was not informed of this, his employees' knowledge on this job was his knowledge. 2 Tex.Jur.2d *Agency* § 52 at 495 (1959).

■ We believe the trial court's action in setting aside the issues set forth in this opinion was in error because they were supported by sufficient evidence, and they were not immaterial, *McClure v. Casa*

*Claire Apts., Ltd.,* supra, and, therefore we sustain appellant's first point.*

Appellee, Pyramid, has several cross-points. The first two are: "Appellant having received satisfaction for his injuries made the basis of this suit by virtue of satisfaction of his judgment against Stewart & Stevenson, this appeal should be in all things dismissed; the cause of action asserted by appellant herein having merged in his judgment against Stewart & Stevenson, this appeal should be in all things dismissed."

It will be remembered that plaintiff recovered judgment against defendant Stewart & Stevenson and settled with the latter before this appeal.

Appellee, Pyramid, relies on *T. L. James & Company, Inc. v. Statham,* 558 S.W.2d 865 (Tex.1977), to support its above set-out cross-points. We believe Pyramid's reliance on this case is misplaced.

There, plaintiff sued South Texas Independent Milk Producers Association (STIMPA) and its employee, Hinojosa, alleging the latter was negligent in driving a STIMPA truck which struck plaintiff.

After a jury trial, plaintiff received a judgment for money damages, which defendants paid into the registry of the court.

Some months later, plaintiff sued the highway contractors based upon the same occurrence as the prior suit, alleging defendants were negligent in "failing to station a flagman . . . in such position as to effectively warn vehicles approaching the back of said line of traffic of the stopped traffic on the highway in front of them." (Id. at 867)

The Court said, "In the case now before us the judgment in [plaintiff's] first suit against STIMPA, et al, has been satisfied in the precise manner required by the terms of the judgment decree, i. e., by payment into the registry of the court. We adhere to the rule stated in *Bradshaw v. Baylor University,* 126 Tex. 99, 84 S.W.2d 703 (1935), and

explicitly reaffirmed in *McMillen v. Klingensmith,* 467 S.W.2d 193 (Tex.1971), that a claimant in no event will be entitled to recover more than the amount required for full satisfaction of his damages." (558 S.W.2d 868).

■ In the instant case, there has been no "full satisfaction." Plaintiff below, was entitled to a recovery against Pyramid based on a jury finding of its 40 percent negligence, as applied to the finding of damages. Plaintiff's settlement after judgment rendered against Stewart & Stevenson, in no way, gave plaintiff "full satisfaction."

See *McMillen v. Klingensmith,* supra at 195. "Unless the settlement with one of the tort feasors fully satisfies the injured party, the release of one party should, according to Prosser, release only the tort-feasor who makes the partial settlement."

These cross-points are overruled. Pyramid has two other cross-points which have either been answered in this opinion, or we find without merit, and they are overruled.

Since our record does not reflect the amount of plaintiff's settlement with Stewart & Stevenson, we reverse and remand this case to the trial court with instructions to render judgment against Pyramid in accordance with the jury verdict and to adjust the rights between the defendants in accordance with the law and the facts relating to indemnity and contribution in view of the settlement made by Stewart & Stevenson.

REVERSED and REMANDED with instructions.

---

* Appellant's First Point: "The trial court erred in disregarding the findings of the jury to Questions Nos. 16, 17, 18, and 21 because there was adequate evidence to support the jurors' determination that Pyramid was causally negligent on the occasion."