Manuel DIAZ and Irma Julieta
Diaz, Appellants,

v.

ELLIOTT–WILLIAMS CO.,
INC., Appellee.

No. 08–97–00117–CV.

Court of Appeals of Texas,
El Paso.

Aug. 6, 1998.

Rehearing Overruled Sept. 23, 1998.

Edward Dunbar, Dunbar, Barill, Crowley & Hegeman, L.L.P., El Paso, for appellant.

John C. Steinberger, Dudley, Windle & Stevens, El Paso, for appellee.

Before BARAJAS, C.J., and LARSEN and McCLURE, JJ.

## OPINION

LARSEN, Justice.

This appeal concerns the retention of control of a defendant over an independent contractor, thus creating a duty to exercise the retained control with reasonable care. In three issues, Manuel and Irma Julieta Diaz contend that the trial court erred in granting Elliott–Williams Co.'s motion for summary judgment. We reverse and remand.

## STANDARD OF REVIEW

■■■■ In a motion for summary judgment, the movant has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.[1] Evidence favorable to the nonmovant is taken as true, and every reasonable inference is resolved in favor of the nonmovant.[2] In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true.[3] Evidence that favors the movant's position will not be considered unless it is uncontroverted.[4]

■■■■ To prevail on summary judgment, a defendant must disprove as a matter of law at least one of the essential elements of each of plaintiff's causes of action, or it must conclusively establish one or more of its defenses.[5] Thus, the question on appeal is not whether the summary judgment proof raises fact issues as to required elements of the movant's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of the movant's cause or claim.[6] When a trial court does not specify the grounds upon which it grants a summary judgment, as here, we will affirm the judgment if any one of the theories advanced in the motion is meritorious.[7]

## FACTS

Manuel Diaz was injured while working at Fort Bliss on a site maintained by the U.S. Army and Air Force Exchange Services (AAFES). Several contractors were working at the site, including James R. Lingle & Associates and Diaz's employer, Industrial Air Systems. While Diaz was installing a sink, prefabricated panels of a walk-in cool-

1. See Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548–49 (Tex.1985).

2. Id. at 549.

3. Knowles v. City of Granbury, 953 S.W.2d 19, 22 (Tex.App.—Fort Worth 1997, writ denied).

4. Id.

5. Friendswood Dev. Co. v. McDade + Co., 926 S.W.2d 280, 282 (Tex.1996).

6. Gibbs v. General Motors Corp., 450 S.W.2d 827, 828 (Tex.1970); Duran v. Furr's Supermarkets, Inc., 921 S.W.2d 778, 784 (Tex.App.—El Paso 1996, writ denied).

7. State Farm Fire & Casualty Co. v. S.S. & G.W., 858 S.W.2d 374, 380 (Tex.1993); Loyd v. ECO Resources, Inc., 956 S.W.2d 110, 121 (Tex.App.—Houston [14th Dist.] 1997, no writ).

er/freezer unit fell and pinned him to the ground, seriously injuring him.

The manufacturer of the cooler/freezer, Elliott–Williams Co., had contracted with the Army and AAFES to deliver and install the unit at Fort Bliss. The contract stated in various provisions that Elliott–Williams was responsible for, among other things, the actions of all its representatives and contracted representatives, and receipt and storage of all items of equipment. Elliott–Williams specifically agreed that it was "fully responsible for the actions of all employees and contracted representatives."[8] Moreover, under the terms of the AAFES–Elliott–Williams contract, Elliott–Williams could not assign rights or delegate obligations conferred by the contract without prior written consent from AAFES. It never sought or obtained such consent.

James R. Lingle and Associates represented Elliott–Williams in Texas, and Lingle was hired to actually install the cooler/freezer purchased by the government. It is undisputed that no employee of Elliott–Williams was physically present on the Fort Bliss site when Diaz was injured.

Elliott–Williams supported its motion for summary judgment with affidavits from James R. Lingle, former owner of James R. Lingle & Associates, and Michael M. Elliott, president of Elliott–Williams. Lingle's affidavit stated:

Lingle and Associates was the manufacturer's representative for Elliott–Williams Co., Inc. As the manufacturer's representative, it was my job to call on customers and sell Elliott–Williams' products. If a sale of Elliott–Williams products was made within my territory, I received a commission on that sale.

The Army and Air Force Exchange service, or AAFES, had a bidder's list . . . one of whom was Elliott–Williams, Co., Inc. If Elliott–Williams Co., Inc. bid on a job for AAFES, it would send me a copy of the bid, and it was then my job to check on the bid to determine when it was awarded. If Elliott–Williams Co., Inc. was awarded the bid, I would notify them. They would then contract with my company to install the equipment, and I would forward them a bill on a per-job basis for the installation.

. . .

Elliott–Williams Co., Inc. did not furnish tools or supplies other than the materials sold by Elliott–Williams Co., Inc. nor did Elliott–Williams Co., Inc. control any aspect of the work other than the final results. Neither I nor my employees was paid on an hourly basis. Instead, Lingle and Associates was strictly paid by the job for installation and by commission for sales.

No employee of Elliott–Williams Co., Inc. was present on Fort Bliss during March 1989, specifically March 3, 1989, the date of the alleged injury suffered by Mr. Diaz which forms the basis of his lawsuit against Elliott–Williams Co., Inc.

In his affidavit, Michael Elliott said:

Lingle was then employed to install the equipment as listed on the bid, and would be paid on a per-job basis after submitting a bill to Elliott–Williams. The only instructions given to Lingle by Elliott–Williams were to complete the job by a certain date. Elliott–Williams did not furnish tools or supplies to Lingle other than the materials sold by Elliott–Williams, nor did Elliott–Williams control any aspect of the work other than the final results. At no time was James Lingle or any of his employees paid on an hourly basis. Lingle was paid strictly by the job for installation, and by commission for sales.

The only connection that Elliott–Williams had with the installation of walk-in freezers at Fort Bliss during March 1989 was to furnish the equipment and instruct Lingle

---

**8.** Although the meaning of the term "contracted representative" is not spelled out in the contract, nor elsewhere in the summary judgment documents before this court, Lingle is characterized by Elliott–Williams as its "manufacturer's representative." Lingle and Elliott–Williams entered into a "Representative Agreement" which was in force at the time of Diaz's injury. Lingle and Elliott–Williams clearly contracted for Lingle to install the cooler/freezer manufactured by Elliott–Williams. Thus, for summary judgment purposes, we conclude that Lingle was a "contracted representative" as contemplated in the AAFES contract.

to install the equipment. No employee of Elliott–Williams was present on Fort Bliss during March 1989, specifically March 3, 1989 the date of the alleged injury.

Upon considering the evidence before it, the trial court granted Elliott–Williams' motion for summary judgment.

### Independent Contractor

The threshold inquiry in a negligence action is whether defendant owed a duty to plaintiff.[9] The existence of a duty is a question of law.[10] Generally, one who hires an independent contractor does not have a duty to insure that the contractor performs his or her work in a safe manner.[11] Under the general rule, the hiring party is not an insurer, and where a plaintiff's injury arises out of the performance of work for which an independent contractor is employed, the duty of care towards third parties belongs to the contractor, not the hiring party.[12] When the hiring party retains some control over the contractor's work, however, but fails to exercise its retained control with reasonable care, it may be liable for damages that result.[13] In that regard, Texas has adopted the Restatement (Second) of Torts, which provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.[14]

Here, Diaz introduced evidence that Elliott–Williams retained control over Lingle by virtue of its overriding duties set out in its contract with AAFES. The contract required Elliott–Williams to retain full respon-

sibility for the actions of its representatives, and for the receipt and storage of the cooler/freezer which caused the injury. That it hired Lingle to actually perform the work of installing the cooler/freezer at Fort Bliss did not relieve it of those responsibilities under the contract. We therefore conclude that a fact issue exists as to whether Elliott–Williams exercised its retained control with reasonable care.

### CONCLUSION

Because we conclude that genuine issues of material fact exist on the issue of retained control, we need not reach the other arguments propounded by Diaz. We reverse and remand for further proceedings in accordance with this opinion.

9. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987); *Montes v. Indian Cliffs Ranch, Inc.,* 946 S.W.2d 103, 106 (Tex.App.—El Paso 1997, writ denied).

10. *Mitchell v. Missouri–Kan.–Tex.R.R.,Co.,* 786 S.W.2d 659, 662 (Tex.1990).

11. *Abalos v. Oil Dev. Co. of Texas,* 544 S.W.2d 627, 631 (Tex.1976); *Hammack v. Conoco, Inc.,* 902 S.W.2d 127, 130 (Tex.App.—Houston [1st Dist.] 1995, writ denied); *Staublein v. Dow*

*Chem. Co.,* 885 S.W.2d 502, 505 (Tex.App.—El Paso 1994, no writ).

12. *See Abalos,* 544 S.W.2d at 631; *Amara v. Lain,* 725 S.W.2d 734, 737 (Tex.App.—Fort Worth 1986, no writ).

13. *Redinger v. Living, Inc.,* 689 S.W.2d 415, 418 (Tex.1985).

14. *Id.* (quoting Restatement (Second) of Torts § 414 (1977)).