**Ray SIMMONS, Appellant,**

v.

**GREAT WESTERN DRILLING COMPANY,**
**Appellee.**

No. 6621.

Court of Civil Appeals of Texas.

Amarillo.

Oct. 1, 1956.

Rehearing Denied Oct. 29, 1956.

Cade & Bowlin, Lubbock, for appellant.

Crenshaw, Dupree & Milam, Lubbock, for appellee.

NORTHCUTT, Justice.

This was a suit brought by Ray Simmons as plaintiff, appellant here, against Great Western Drilling Company as defendant, appellee here, to recover compensation payable under the terms of an oral contract of employment. It was the contention of appellee that appellant's suit was for services of appellant rendered in assisting appellee to acquire certain oil and gas leases and that appellant was not an employee of appellee and could not recover because the agreement was not in writing; that appellant did not have a license under the Real Estate Dealers License Act, Vernon's Ann. Civ.St. art. 6573a and neither did he have a license under the Securities Act, Vernon's Ann.Civ.St. art. 600a. The case was tried to a jury upon special issues and the issues submitted were answered by the jury favorable to appellant but the trial court rendered judgment non obstante veredicto for the defendant and appellant perfected this appeal from that judgment. The trial court submitted the case to the jury upon the following three special issues:

*"Special Issue No. 1*

"Do you find from a preponderance of the evidence, that the plaintiff, Ray

Simmons, was the procuring cause of the acquisition by the defendants, Great Western Drilling Company, of the oil and gas lease covering the South 175 acres of the North One-half of Section 22 from the Cities Service Oil Company?

"Answer 'Yes' or 'No.'

"Answer: Yes.

### "Special Issue No. 2

"Do you find from a preponderance of the evidence that the plaintiff, Ray Simmons, was the procuring cause of the acquisition by the defendant, Great Western Drilling Company, of the oil and gas lease covering the North 145 acres of Section 22 from Cities Service Oil Company?

"Answer 'Yes' or 'No.'

"Answer: Yes.

### "Special Issue No. 3

"Do you find from a preponderance of the evidence that the plaintiff, Ray Simmons, was the procuring cause of the acquisition by the defendant, Great Western Drilling Company, of the oil and gas lease covering the South Half of Section 22 from the Atlantic Refining Company?

"Answer 'Yes' or 'No.'

"Answer: Yes."

The jury answered each of these issues "Yes." The plaintiff requested nine special issues inquiring whether plaintiff was a regular employee of defendant during the time he was engaged in negotiating the farm-out agreements, if he did negotiate the same; if plaintiff had fully performed the acts of his employment; if plaintiff was employed to negotiate farm-out contracts for defendant; if defendant acquired the farm-out on the North One-half of Section 22 because of the negotiations of plaintiff under his employment; the same question as to the South One-half of Section 22; if the negotiations and efforts by plaintiff were the producing cause of the acquisition by defendant of the farm-out on the South One-half of Section 22; if the negotiations and efforts of the plaintiff were the producing cause of the acquisition by defendant of the farm-out on the North One-half of Section 22, and the same question as to the South Half of Section 22. All of these requested special issues were refused by the court. The farm-outs in question in this suit concerned Section 22. We are of the opinion, regardless of what the term "farm-out" may mean or how it may be interpreted, that appellant was approached by appellee in connection with securing farm-outs on certain properties located in Cochran County. Plaintiff testified he was to try to get farm-out agreements for defendant. Mr. Tucker, president of defendant company, testified on direct examination as follows:

"Q. Just tell them, Mr. Tucker, what was—the first conversation that you had with Ray, what was said? A. We pointed out to him the area we were interested in which roughly an area stretching from Section 5 across through Sections 10, 17, 23, told him that where we were looking at the map, and he could see, too, of course, that Cities Service, Stanolind, Atlantic and others had leases in there and I asked him if he thought he could secure a farm-out an any of that land and he said that he thought he could, he'd go to work on it."

Mr. Tucker testified as follows:

"Q. Mr. Tucker, I believe that all of these agreements which Ray brought in, the ones you have paid him on and the ones that he claims you have not paid him on, were all executed by you, were they not? A. The agreements?

"Q. Yes, on behalf of Great Western. A. I'm sure they were, yes.

"Q. Did Ray have any authority to execute any instruments on behalf of Great Western Drilling Company? A. No.

"Q. Did he have any authority to spend any of the money of Great Western Drilling Company? A. No, he didn't spend any of our money.

"Q. He was not authorized to purchase anything on behalf of Great Western then? A. He was authorized to attempt to get farm-out agreements on there, there's no purchase price on the farm-outs, no cash price.

"Q. In other words, his sole duty was to go out and work up a deal and bring it in to you and if you approved it, then it would be executed by you or some other officer in Great Western Drilling? A. That's right."

After the plaintiff had discussed the farm-out with the Cities Service and Atlantic he reported to Mr. Tucker that the Cities Service and Atlantic stated that he would have to have a specific written request and Mr. Tucker wrote the written request and told defendant to make his letter just like the letter written by Mr. Tucker, only the appellant was to sign the letter. The letter written by Mr. Tucker and copied by Mr. Simmons was as follows:

"Farmout deal. I have an independent operator who is desirous of making a farmout agreement on the following property on which you hold Oil and Gas leases.

"S/2 Section 5 A–48.
"SW/4 Section 17 A–49
"SW/4 Section 23 A–45

all in Harrison & Brown Survey Cochran County, Texas.

"This operator agrees to commence, within thirty days from date of contract, the drilling of a well to a depth of approximately 5000 feet and complete same in the Slaughter zone of the San Andres line and to commence an additional well within 60 days after the completion of the first well and another well 60 days after the completion of second well and follow this schedule of commencing a well 60 days after the completion of the previous well until the property is fully developed. Further agreement will provide for you to retain ⅛ of ⅞ overriding royalty on the South Half of Section 5 and ¹⁄₁₆ of ⅞ overriding royalty on the Southwest Quarter of Section 17 and the Southwest Quarter of Section 23.

"When operator has recovered from production, less royalties and overriding royalties as above stated an amount equal to $50,000.00 per well plus operating expenses, you are to have the option of continuing the overriding royalties as herein provided or to re-assign the overriding royalties to operator and operator will assign to you a one-half participating interest in the property. Operator will agree to enter into operating agreement based on standard A.P.I. Accounting procedures. An early reply will be appreciated.

" 'Ray, if asked the name of operator you may say Great Western Producers, Inc. This is wholly owned subsidiary of Great Western Drilling Company and is operated by the same personnel.' "

Under the agreement, the plaintiff was to be paid a thousand dollars for each well drilled by the defendant upon the properties secured by the plaintiff under the farm-out agreement. Defendant paid plaintiff $12,000 for the wells drilled upon certain property that it admitted the plaintiff secured the farm-out agreements upon but contended the plaintiff did not secure the farm-out agreements as to Section 22. It was stipulated by the parties and found by the court that there were 13 wells drilled by appellee on Section 22 and that if appellant was entitled to recover herein

he was entitled to $13,000 plus $2,500 attorneys' fees, making a total of $15,500.

Appellant presents his first, second, third, fourth, fifth and ninth assignments of error together which are as follows:

"First Point Restated:

"The error of the trial court in disregarding the jury verdict and rendering judgment for defendant non obstante veredicto, when the evidence disclosed that plaintiff Ray Simmons was a regular employee of defendant Great Western Drilling Company at the time he negotiated the farm-out agreements for defendants.

"Second Point Restated:

"The error of the court in rendering judgment for defendant non obstante veredicto when the verdict of the jury was supported by the evidence.

"Third Point Restated:

"The error of the court in refusing to give the plaintiff's specially requested issue No. 1, as follows:

" 'Do you find from a preponderance of the evidence that the plaintiff, Ray Simmons, was a regular employee of the Great Western Drilling Company during the time that he engaged in negotiating the farm-out agreements, if he did so negotiate the same, or any of them?' (Tr. p. 22)

"Fourth Point Restated:

"The error of the court in refusing to give the plaintiff's specially requested issue No. 3, as follows:

" 'Do you find, from a preponderance, of the evidence, that Ray Simmons was employed by Great Western Drilling Company to negotiate farm-out contracts for Great Western Drilling Company?' (Tr. p. 24)

"Fifth Point Restated:

"The error of the court in refusing to give the plaintiff's specially requested issue No. 2, as follows:

" 'Do you find from a preponderance of the evidence, that Ray Simmons had fully performed all of the acts of his employment, if any, by Great Western Drilling Company?' (Tr. p. 23)

"Ninth Point Restated:

"The error of the court in overruling plaintiff's motion for judgment based upon the jury verdict and findings of fact by the trial court, both of which were supported by the evidence."

By appellee's counterpoints it contends that the evidence shows conclusively that appellant was not a regular employee of appellee at any time material to this controversy; that the trial court properly rendered judgment for appellee notwithstanding the verdict of the jury because the undisputed evidence shows that the alleged contract upon which appellant sought to recover was not in writing; that the trial court properly rendered judgment for appellee notwithstanding the verdict of the jury because the undisputed evidence shows that appellant did not have, at any time material to this controversy, a license under the Real Estate Dealers License Act; that the trial court properly rendered judgment for appellee notwithstanding the verdict of the jury because the undisputed evidence shows the appellant did not have, at any time material to the controversy, a license under the Securities Act, and that the verdict of the jury was contrary to the great weight and preponderance of the creditable testimony.

It is admitted that the contract sued upon was oral and not in writing. It is also admitted that appellant did not have a license under the Real Estate Dealers License Act nor under the Securities Act. Appellee contends that appellant cannot recover herein because of the provisions contained under Articles 579-35, 3995, 3995a, 6573a, Sec. 13 and 6573a, Sec. 28.

Without quoting each of these articles, it will suffice to state that they deal

with the right to sue for commissions or compensation for services rendered in the sale or purchase of securities, oil and/or gas mining leases; oil and/or gas royalties, mineral and mineral interest and showing the right to act as a real estate broker. We do not believe under this record any of these statutes apply. Appellant certainly was not in any manner authorized or attempting to sell anything and we do not believe he was authorized or attempting to purchase anything. As shown by the testimony, all appellant was authorized to do was to attempt to get farm-out agreements, "There was no purchase price on the farm-outs, no cash price." Nothing was sold and nothing was bought. It was nothing more than a working agreement. We do not believe that a transfer of any oil lease was absolutely necessary. If the farm-out agreement was made and filed for record it would show the interest of the parties. The Supreme Court in the case of Herren v. Hollingsworth, 140 Tex. 263, 167 S.W.2d 735–739, we think has determined that the above articles would not apply in a case of this kind, where it is stated:

"In this case Herren was not authorized to sell or buy. His authority was limited to finding the services of a driller acceptable to Hollingsworth, a driller willing to make a contract with Hollingsworth to explore his ranch for oil and gas. The agreement between the parties did not empower Herren to agree to any of the terms of the drilling contract, so as to bind Hollingsworth, because the selection of the contractor and the making of the contract were left to the discretion of Hollingsworth. The agreement between the parties in this suit did not refer to an instrument in existence, but to one that might or might not be executed in the future, and all the terms of which would be decided by Hollingsworth and the contractor, whoever he might be. Herren had

nothing to sell or to offer for sale, but was authorized merely to find a contractor who would confer with Hollingsworth; and after necessary negotiations were completed, and at some future date, the contractor and Hollingsworth would execute a contract to drill a well for exploration purposes, in consideration of a lease conveying an interest in the minerals—the terms of which and the number of acres to be included were all to be decided upon by the parties at some future time, provided they could reach an agreement."

Appellant was the special agent or special employee of the appellee to attempt to get farm-outs and as such special agent or employee had authority only to do the things entrusted to him and such as were apparently necessary to accomplish that end. In order for there to have been a farm-out agreement ever entered into, it is clearly shown that the details of the agreement necessarily were to be determined by the two parties entering into the farm-out agreement, and as shown by the undisputed record in this case, the details of the farm-out agreement were and had to be worked out by the two parties entering into the farm-out agreement and was not a purchase or sale of securities or oil rights but a contract to develop certain properties for a consideration.

■ We think it is so well established as the law of this state that a judgment non obstante veredicto will only be entered where a directed verdict would have been proper that no authorities are necessary.

It was agreed and stipulated by the parties, and also found by the trial court, that there were 13 wells drilled by appellee on Section 22 which were not paid for by appellee and that if appellant was entitled to recover herein it would be for the sum of $13,000 together with $2,500 for reasonable attorneys' fee, making the total of $15,500.

As shown by the three special issues submitted by the court to the jury, it was found by the jury that appellant was the procuring cause of the acquisition by the appellee of the oil and gas leases covering Section 22. This could not mean anything only that appellant was the procuring cause of the acquisition of the oil and gas leases as pleaded and proven by the parties. There is no contention made by either of the parties that this acquisition was secured by any other means than the securing of the farm-outs and such verdict would mean acquisition by farm-outs. We hold that the uncontroverted evidence reveals that appellant was a special agent or special employee of appellee to secure the farm-out agreements. The jury found, upon sufficient evidence, that he did secure them. Judgment of the trial court is reversed and judgment rendered for appellant for $15,500 as stipulated by the parties and as found by the trial court.