GREAT WESTERN DRILLING COMPANY V. RAY SIMMONS

No. A-6111. Decided May 1, 1957.
Rehearing overruled June 12, 1957.
(302 S.W. 2d Series 400.)

*Crenshaw, Dupree & Milam* and *R. K. Harty,* all of Lubbock, for petitioner.

*Cade & Bowlin* and *James O. Cade,* all of Lubbock, for respondent.

Mr. Justice Garwood delivered the opinion of the Court.

Our respondent, Simmons, sued our petitioner, Great Western Drilling Company, for commissions or compensation allegedly due the former under a 1952 oral employment contract, pursuant to which he procured for the petitioner-defendant certain "farm-out" arrangements between the latter and the owners of substantial blocks of oil and gas leases, whereby the petitioner-defendant agreed to (and thereafter did) drill on several of the leases in return for the commitment of the corresponding lease owner (thereafter complied with) to assign to the petitioner- defendant the lease or an interest therein. The oral employment contract allegedly stipulated a compensation at the rate of $1000 per well to be paid the respondent-plaintiff, and the latter is admittedly entitled to a total recovery of $13,000, if entitled to anything at all. The record shows without dispute that the litigants had a similar agreement relating to "farm-outs" in several sections other than that (Section 22) involved in the instant suit, which agreement was in writing, and the compensation called for in which has been duly paid.

The petitioner-defendant, while adducing evidence to the effect that the alleged oral agreement in suit was never made, and that the respondent-plaintiff did not procure the particular "farm-outs" in question, pleaded the "statute of frauds" provisions of the statutes relating to suits for real estate commissions (Arts. 3995a, Vernon's Texas Civ. Stats., and Sec. 22, Art. 6573a, Vernon's Texas Civ. Stats., as amended in 1949 by Acts 51st Leg., Reg. Sess., Chap. 149, the corresponding section of the present Real Estate License Act as enacted or re-enacted in 1955, being Sec. 28 of Art. 6573a, Vernon's, Vol. 19, pocket part). Urged also as a defense was the fact, admitted by the respondent-plaintiff, that the latter had no license either (a) as a real estate salesman or dealer under the Real Estate Deal-

ers' License Act, as it existed in 1952, (see Secs. 13 and (2) (a)-
(1) of Art. 6573a, [now Secs. 4(1), 19] Vernon's, Vol. 19,
supra, as amended by the 1949 Act, supra) or (b) as a securi-
ties dealer under the Securities Act (see Vernon's, supra, Vol.
2, Art. 600a, Sec. 33b, and pocket part, Art. 579-35). On the
other hand, the respondent-plaintiff asserted not only that the
subject matter of the employment agreement falls without the
scope of the statutes above mentioned, but also that he was an
"employee" or "regular employee"—in the nature of an *alter
ego*—of the petitioner-defendant in respect of the dealings with
the lease owners, and thus exempted from the statutes by reason
of Sc. 6 of the 1955 Real Estate License Act and corresponding
provisions of the 1955 Securities Act (see Vernon's, supra, Vol.
19, pocket part, Art. 6573a, Sec. 6, and Vol. 2, pocket part, Arts.
579-3 and 579-35).

In presenting the case to the jury, the trial court, despite
requests by the respondent-plaintiff himself for issues. upon
both the existence and character of his employment, submitted
only the matter of whether he was the procuring cause of the
acquisition of the leases in question by the petitioner-defendant,
the jury answering in the affirmative. We treat these findings
as the equivalent of, or as including, findings that the respon-
dent-plaintiff procured the corresponding "farm-outs" or ar-
rangements, pursuant to which the leases were actually as-
signed by the owners to the petitioner-defendant. Thereafter,
however, judgment was rendered for the petitioner-defendant
notwithstanding the verdict and evidently under one or more
of the statutory defenses above mentioned. The Court of Civil
Appeals reversed this judgment and rendered judgment for the
respondent-plaintiff on the verdict, apparently sustaining the
above-mentioned contentions of the latter as to both the char-
acter and subject matter of the employment contract, thus nec-
essarily holding, also, that the evidence.established as a matter
of law the employment of the respondent-plaintiff and his em-
ployment in the capacity of a mere or "regular" employee as
distinguished from an independent contractor. 294 S.W. 2d 230.

■ We find ourselves in disagreement with all of the conclu-
sions last above mentioned, and will discuss first that concern-
ing the status of the respondent-plaintiff as an "employee" or
"regular employee." In so doing, we have assumed, for the pur-
poses of this opinion, that, if the respondent-plaintiff were a
mere employee, he would thereby be exempt from otherwise
applicable provisions of the above-mentioned licensing statutes
and, further, that he would also be exempt from the operation

of Art. 3995a, supra, although the latter conceivably would bar an action even of a mere employee where the contract of employment is oral. In our opinion the evidence not only does not establish conclusively that the respondent-plaintiff was a "regular" employee or servant but, on the contrary, establishes as a matter of law that his employment status was that of an independent contractor.

His own testimony shows that he was an independent businessman operating "on his own." Prior to his connection with the petitioner-defendant he owned and traded in mineral leases on his own account. At all relevant times, he had his own office, which, although it was in his home, was still an office and was in nowise connected with the office of the petitioner-defendant. He had his own office stationery, and his own business acquaintances and connections, on account of which latter he was evidently retained for whatever work he did for the petitioner-defendant. His connection with the latter was not evidenced by any title of employment, nor was he carried on its records as an employee for social security tax purposes or otherwise. He worked at the time and in the manner he himself chose, did his business traveling in his own automobile and paid from his own pocket such expenses as the work entailed. The business of the petitioner-defendant as a drilling company was plainly not restricted to drilling under "farm-outs," still less to those in the particular small area mentioned in this suit; and the respondent-plaintiff had no connection at all with the petitioner-defendant unless through the procurement of these "farm-outs." He had evidently not been employed by the petitioner-defendant at any time previous as a "regular employee," and his work incident to the "farm-outs" extended over a period of less than two years, during which he engaged also in extensive and important leasing work in other areas for his own account and that of persons not here involved. He was directed or assisted by officers or employees of the petitioner-defendant only to the limited extent that the latter specified or explained to him the results which were expected of him. Indeed, the only instance cited as evidencing control of the details of his work by the petitioner-defendant is that in which the president of the latter wrote, at his request, a form of letter which he might (or might not) follow in placing a "farm-out" proposition before the lease owners. This was a single, incidental matter done for the convenience of the respondent-plaintiff himself and in no event amounted to more than an additional explanation of the results which the latter was to procure.

■ Under the principles announced in decisions such as Dave Lehr, Inc. v. Brown, 127 Texas 236, 91 S.W. 2d 693; Smith Bros. v. O'Bryan, 127 Texas 439, 94 S.W. 2d 145; and Carter Publications, Inc. v. Davis, Texas Civ. App., 68 S.W. 2d 640, wr. of er. refused, the arrangement was that of employer and independent contractor. While in determining the relationship, the *right* of control in the alleged master over the detailed means whereby the alleged servant is to accomplish an ultimate result may be as important as the actual exercise of that right, all of the indications are against, rather than towards, the existence of the right.

The respondent-plaintiff thus being an independent contractor, and admittedly *not* acting as an attorney-in-fact or attorney-at-law, he was not exempt by reason of his employment status from the inhibitions of the statutes invoked against him. Other than these "attorney" capacities and that of a mere employee, we know of no status he might occupy under the record before us, which would exempt him. The decision in Herren v. Hollingsworth, 140 Texas 263, 167 S.W. 2d 725, which seems to be the one relied on to establish an exempt relationship, does not purport to deal with that point, but treats only of the matter of whether the plaintiff in that case, who was acually a licensed real estate broker and obviously an independent contractor, but *not* a licensed *securities dealer,* could maintain his action for compensation without the latter license in the light of the subject matter of his employment. Questions such as the right of control over the details of his work by the defendant "employer," or whether he occupied the status of a servant, independent contractor or something else, were not even discussed.

But Herren v. Hollingsworth is also cited on, and brings us now to, the contention of inapplicability of the above-mentioned statutes by reason of the subject matter or ultimate purpose of the alleged employment contract and notwithstanding that the respondent-plaintiff was not a regular employee. In this behalf, it is enough to say that we do not rest our holding on the Securities Act, which was the only statute involved in the Herren case; and that, the general purposes, as well as the terms, of that act being far from identical with those of the other statutes here in question, the fact that a given transaction does not fall within the former does not necessarily mean that it is beyond the purview of the latter. In the Herren case, the object of the plaintiff's employment by the defendant landowner was simply to procure a driller disposed to negotiate

with the latter for mineral development of the land. While recognizing that an oil lease, or an assignment of one, is a "security" under Kadane v. Clark, 135 Texas 496, 143 S.W. 2d 197, we held, in accordance with our earlier opinion in Fowler v. Hults, 138 Texas 636, 161 S.W. 2d 478, that the Securities Act being directed against sellers rather than buyers, and the plaintiff being employed by the landowner to procure the driller as a mere "prospect" for an ultimate development contract, which did not necessarily involve the "prospect" acquiring an interest in the land, the plaintiff was not *selling* anything to the driller and certainly not selling anything to the defendant landowner, so was not required to have a license under the Act. The decision may also be authority for the proposition that, if the plaintiff could be considered as "selling" something to the driller, all he could have sold would have been the mere possibility that the defendant would make a lease to the driller, such a possibility not being a "security."

We rest the instant decision on Art. 3995a, supra, which inhibits suits "for the recovery of any commission for the sale *or purchase* of oil and/or gas mining leases * * * royalties, minerals or *mineral interests*" (emphasis supplied) unless the agreement to pay the commission be in writing and signed by the party sought to be charged therewith. We also rest our decision on Sections 13 and (2) (a) (1) of Art. 6573 (a) as amended in 1949, supra, according to which an action for commissions for any of the services or acts described therein may not be maintained "without alleging and proving that such person * * * was a duly licensed real estate dealer or salesman at the time the alleged cause of action arose." Among the many different services or acts listed are: "* * * or offers or attempts, or agrees to negotiate a sale, exchange, purchase, or rental of an estate or interest in real estate * * * or assists or directs in the procuring of prospects, or the negotiation * * * of any transaction which does or is calculated to result in the sale, exchange, leasing or renting of any real estate, or who buys * * * , sells * * * , or otherwise deals in options on real estate * * * ."

■ In Little v. Childress, 12 S.W. 2d 648, aff'd by the Commission of Appeals in 17 S.W. 2d 786, the statute of frauds (Art. 3995, Vernon's Texas Civ. Stats.) was held to bar an action on an oral contract whereby the defendant owner of a state oil and gas permit agreed to assign to the plaintiff an interest therein conditioned only upon certain drilling to be done on the land in question by the plaintiff. From the opinion in that case and the decision in Alworth v. Ellison, Texas Civ. App.,

27 S.W. 2d 639, wr. of er. refused, it is clear that the same result obtains where the subject matter of the agreement to assign is a mineral lease or interest therein, as distinguished from a permit. If an agreement to assign a mineral lease or permit, or interest therein, falls within Art. 3995, supra, it follows that one who seeks to recover commissions for procuring such an agreement comes within the inhibition of Art. 3995a, supra. The words "commission for the sale or purchase of" in Art. 3995a do not limit its application to employment contracts, the terms of which require an actual assignment or deed as prerequisite to earning the commission. Otherwise the effect of the article would be illogically narrow in relation to its object of preventing false claims for commissions. Obviously commissions are often sought where the agent allegedly procures a seller or buyer ready, able and willing to consummate the transaction on the terms prescribed by the principal, and the latte rthereupon withdraws from the transaction. We are cited to no decision, and know of none, in which we have held the latter type of case to fall without the statutory orbit.

The above-quoted language of the licensing statute, on which the petitioner-defendant relies, is, of course, far more particularized, and is probably broader in scope, than Art. 3995a. Certainly, on its face, it more than includes cases like the instant one; nor do our decisions at all suggest any reluctance to take it at face value. In Gregory v. Roedenbeck, 141 Texas 543, 174 S.W. 2d 585, we adjudged the Real Estate Dealers' License Act to be valid and to bar recovery by an unlicensed plaintiff on an agreement of the defendant, a licensed dealer, to pay the plaintiff a commission for furnishing the defendant with the name of a prospect, to whom the land was accordingly sold. Although the plaintiff had never previously furnished any dealer with the name of a prospect in expectation of payment, we expressly held "that the performance for compensation of one act by a person, in connection with the procurement of a prospect for the sale or purchase of real estate, constitutes such person performing the act of a real estate dealer within the meaning of the Real Estate Dealers' License Act." See also Nichols v. Anderson, Texas Civ. App., wr. of er. refused, 164 S.W. 2d 268, in which the plaintiff merely pointed out royalties that were available for sale but was held barred for lack of a license.

Since the alleged employment contract in suit would be unenforceable because not in writing and because the respondent Ray Simmons did not have a license as a real estate dealer at the time of his alleged performance, the judgment of the trial court

276

denying Simmons recovery was correct and must be affirmed, while that of the Court of Civil Appeals allowing recovery was erroneous and must be reversed. It is so ordered.

Opinion delivered May 1, 1957.

Rehearing overruled June 27, 1957.