**BROWNSVILLE & MATAMOROS BRIDGE COMPANY, Appellant,**

v.

**Donald Keith NULL, et al., Appellees.**

**No. 1321.**

Court of Civil Appeals of Texas, Corpus Christi.

Oct. 19, 1978.

Rehearing Denied Jan. 25, 1979 Overruled and Granted with Opinion.

Amigoland Feb. 22, 1979 Overruled.

Null March 1, 1979 Overruled.

Robert B. Benton, O'Leary, Sanchez & Benton, Brownsville, Harry F. Maddin, Maddin, White & Brin, Inc., Corpus Christi, for appellant.

John E. Lewis, McAllen, Gordon L. Briscoe, John W. Black, III, Stephen E. Ulrich, Royston, Rayzor, Vickery & Williams, Brownsville, for appellees.

OPINION

NYE, Chief Justice.

This is a suit for personal injuries. Appellee, Donald Null, an employee of a subcontractor, brought suit against appellant, Brownsville & Matamoros Bridge Company, and appellees, Amigoland, Inc., and Ballenger Construction Company, to recover damages for personal injuries he sustained when a wooden staircase attached to the exterior of a frame building owned by the Bridge Company collapsed as he descended the stairs. In response to special issues, the jury found that defendant Amigoland, Inc. committed acts of negligence which were a proximate cause of Null's injuries, but failed to find defendants Brownsville & Matamoros Bridge Company or Ballenger Construction Company guilty of negligence. The jury convicted plaintiff Null of contributory negligence. However, the trial court granted Null's and Amigoland's motions to disregard certain special issues and entered a judgment non obstante veredicto awarding recovery against Brownsville & Matamoros Bridge Company. The trial court denied the Bridge Company's claims for contribution and/or indemnity against Amigoland and the Construction Company. Brownsville & Matamoros Bridge Company appeals to this Court from the trial court's judgment.

The Bridge Company and the National Republic of Mexico jointly own the international bridge, which spans the Rio Grande River between Brownsville, Texas, and Matamoros, Mexico. The Bridge Company also owns approximately five acres of land and several buildings on the Texas side of the bridge. The Bridge Company is in the business of collecting tolls from vehicles and pedestrians who cross the bridge and in leasing office space to various governmental agencies which conduct custom and inspection operations for traffic moving across the United States and Mexican borders.

Amigoland, at the time of the accident, was developing a shopping center on a tract of land not far from the bridge. The development plans contemplated extending a

shopping mall access road to join with the existing road leading to the bridge. This construction required the relocation of certain buildings owned by the Bridge Company. Amigoland's general contractor was Ballenger Construction Company, which was in charge of the paving improvements. In order to effectuate these plans, Amigoland sought the Bridge Company's approval to alter the existing road crossing the Bridge Company's land and to relocate some of the Bridge Company's buildings. The Construction Company and Amigoland had a series of meetings with the Bridge Company and its tenants to discuss the general proposal. The Bridge Company's tenants (the various governmental agencies) did not object to the proposed relocation of the buildings provided Amigoland did not interrupt the operation of their facilities. In accordance with these discussions, the Bridge Company drafted a letter agreement which was signed and accepted by Amigoland. This letter agreement, in essence, granted Amigoland permission to relocate the buildings provided that Amigoland would furnish temporary office space and pay all of the direct and indirect moving expenses. Thereafter, Amigoland hired M. Castillo and Sons, a moving company, to move the buildings.

The building upon which plaintiff Null sustained his injuries during the relocation process was known as the "Customs building" or the "primary inspection building." This wooden frame building was primarily a one-story rectangular structure with an open porch which was supported by beams. One end of the building was two stories high. There was an outside entrance to the second story office which was accessible by an outside wooden stairway. Three governmental agencies, including the U. S. Customs and Immigration, occupied offices on the first story of the building and officials of the Bridge Company occupied the second floor office. Floodlights, which were used to illuminate nighttime custom inspections, were located on the corner of the second story of this building.

During the relocation process, the occupants of the primary inspection station moved across the street to a temporary mobile home provided by Amigoland. Although it was agreed that the building was not to be used during the relocation process, it was contemplated that the existing floodlights would be necessary to illuminate the nighttime inspections. It was, therefore, necessary to hire an electrician to disconnect all of the electrical lines prior to moving the building and to reconnect the electrical lines to the floodlights on the second floor for each night's operation. Amigoland asked the Construction Company to obtain bids from electrical contractors to do the necessary electrical work. The Construction Company thereafter hired Null's employer, Star Electric, for the job.

Plaintiff Null was in charge of the electrical work for Star Electric. His general instructions from his employer, Star Electric, were to disconnect all the electrical connections from the building and to provide temporary electrical service as needed. Because it would take the moving company several days to move the building, Null disconnected the temporary electrical lines in the morning and then reconnected the lines after the moving company had stopped work in the afternoon. The floodlights on the second story of the Customs building could be illuminated from the ground by connecting a temporary electrical loop. The direction of the floodlights had to be re-adjusted from a vantage point on the first story roof of the building as the position of the building changed periodically during the course of the move.

In order to move the building, the moving company first jacked the building up off the ground and placed it on rails. As a result of the building being placed on the rails, the outside stairway was raised completely off the ground so that the lower steps were no longer touching the ground. The 4″ × 4″ wood braces which supported the stairway were removed. The moving company attempted to brace the stairs by placing a small chain around the middle of the stairway and nailing the chain to the side of the building.

Plaintiff Null was injured on June 30, 1970, five days after he first commenced his electrical work on the building. During this time span, Null had used the stairway on several occasions to reach the roof. The testimony showed that he had used the stairway before the building had been lifted from the ground, after the building had been placed on rails but before it had been moved, and after the actual move of the building commenced. On the day of the accident, Null and his helper, Larry Vano, had climbed the stairway of the building to reach the roof and had adjusted the spot lights. After they had completed the necessary adjustments and were descending the stairs, the stairs fell. Vano had almost reached the ground and Null had descended one or two stairs from the platform at the top of the stairway when the stairway gave away. Null was seriously injured.

Null filed suit against the Bridge Company, Amigoland and the Construction Company alleging that each defendant possessed and shared control of the stairway which constituted a hazardous condition, and that each defendant had supplied the stairway for Null's use in adjusting the outside floodlights. Null alleged that each defendant was guilty of negligence which proximately caused his injuries by: 1) failing to inspect the stairway; 2) failing to warn Null that the stairway was not safe to use; and 3) failing to make the stairway safe for Null's use. The three named defendants filed cross-actions against each other seeking indemnity and/or contribution. In addition, each defendant filed a third party action against M. Castillo & Sons, the moving company, for indemnity and/or contribution.

During the trial, Null entered into a settlement agreement with Amigoland, Ballenger and Castillo & Sons. The exact terms of the agreement were not disclosed to the court or to the jury. At the close of plaintiff Null's evidence, Null took a nonsuit as to each defendant except the Bridge Company. The trial court denied the Bridge Company's motion for directed verdict. Thereafter, the case went to the jury on the issues of the Bridge Company's negligence, Null's contributory negligence and the Bridge Company's cross-claims and third party action for indemnity and/or contribution against the other defendants.

The jury, in response to special issues: 1) found that upon the occasion in question, the Bridge Company's building with its outside stairway was not reasonably safe for use by Null in the performance of his work; 2) found that such unsafe condition was a proximate cause of the injuries sustained by Null; 3) failed to find that the Bridge Company knew that the stairway was not reasonably safe for use by Null; 4) found that such unsafe condition could have been discovered by the Bridge Company by means of reasonable inspection; 5) found that the Bridge Company failed to inspect the stairway to determine whether the same was reasonably safe for use by Null; 6) did not find that such failure was negligence; 7) found that such failure was a proximate cause of the occurrence in question; 8) found that the Bridge Company failed to make the stairway in question reasonably safe for use by Null; 9) did not find that such failure was negligence; 10) found that such failure was a proximate cause of the occurrence in question; and 11) found Null's damages to be $256,979.50.

Regarding Null's contributory negligence, the jury found: 12) that Null was negligent in using the Custom House stairs after the building was jacked up on the railings; and 13) and 14) that such was negligence and a proximate cause of Null's injuries. In response to special issues concerning Amigoland, the jury found: 15) that Amigoland was the general contractor for the relocation of the buildings; 16) that Amigoland's failure to a) inspect, b) repair the stairs, or c) warn Null constituted negligence; and 17) that each failure was a proximate cause of the occurrence in question. The jury failed to find that Ballenger Construction's failure to inspect, repair or warn was negligence or a proximate cause of Null's injuries.

The Bridge Company filed a motion for judgment on the verdict which was denied

by the trial court. The trial court granted Null's motion to disregard the jury's answers to special issues Nos. 3, 6, 9, 13 and 14 above and for judgment non obstante veredicto; and granted Amigoland's motion to disregard the jury's answers to special issues Nos. 15, 16 and 17 above and for judgment non obstante veredicto. Thereafter, the trial court entered judgment against the Bridge Company in favor of Null for $256,979.50 damages, and denied the Bridge Company's claims for indemnity and/or contribution from the cross-defendants.

The Bridge Company brings forward points of error complaining of the trial court's action in granting appellees' motions to disregard special issues and in entering a judgment non obstante veredicto. In considering these points of error, we shall keep in mind the familiar rules concerning appeals of this nature.

█ In general, a judgment non obstante veredicto can be upheld on appeal when a directed verdict would have been proper. *Villarreal v. Boggus Motor Co.,* 471 S.W.2d 615 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n. r. e.). Special issue findings may be disregarded if they are immaterial or have no support in the evidence. *Eubanks v. Winn,* 420 S.W.2d 698, 701 (Tex. Sup.1967); *Ramirez v. National Standard Ins. Co.,* 563 S.W.2d 837 (Tex.Civ.App.— Corpus Christi 1978, no writ). In determining a no evidence point, all testimony must be considered in the light most favorable to the party against whom the motion is sought and every reasonable intendment deducible from the evidence is to be indulged in such party's favor. *Leyva v. Pacheco,* 163 Tex. 638, 358 S.W.2d 547, 550 (1962); *Newitt v. Camden Drilling Co.,* 552 S.W.2d 928, 931 (Tex.Civ.App.—Corpus Christi 1977, no writ). Where the special issues have support in the evidence, the trial judge may not render judgment non obstante veredicto even though the great weight and preponderance of the evidence might be to the contrary. *Gulf, Colorado & Santa Fe Railway Co. v. Deen,* 158 Tex. 466, 312 S.W.2d 933 (Tex.Sup.1958), cert. denied, 358 U.S. 874, 79 S.Ct. 111, 3 L.Ed.2d 105;

*Newitt v. Camden Drilling Co.,* 552 S.W.2d 928, 931 (Tex.Civ.App.—Corpus Christi 1977, no writ). Rule 301, T.R.C.P. The trial court may not properly disregard a jury's negative finding and substitute its own affirmative finding unless the evidence conclusively establishes such an affirmative finding. See *Bond v. Otis Elevator Co.,* 388 S.W.2d 681, 685 (Tex.Sup.1965); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 30 Tex.L.Rev. 361 (1960).

In points of error one through three, the Bridge Company complains that the trial court erred in rendering any judgment against it because: 1) there was no evidence of any probative force to establish that the Bridge Company breached any legal duty to Null; 2) the evidence conclusively established that the accident was solely the result of a transitory condition inherent in the moving process; and 3) the evidence established that the Bridge Company surrendered control of the building to others prior to Null's accident. In these points of error, the Bridge Company, in essence, contends that Null failed to meet his initial burden of proving a legal duty owed to him by the Bridge Company. We agree.

█ Null's cause of action against the Bridge Company was predicated solely on the Bridge Company's alleged breach of a landowner's general duty to keep his premises in a safe condition for invitees on the premises. See e. g., *Halepeska v. Callihan Interests, Inc.,* 371 S.W.2d 368, 378 (Tex. Sup.1963). This duty on the part of a landowner requires generally the elimination, or warning to the invitee of hidden conditions which are unreasonably dangerous and which are known to the owner or occupier but are unknown to the invitee. This duty also requires an owner or occupier to make such an inspection of the premises to discover hidden dangers as would be made by a reasonably prudent person in the exercise of ordinary care. *City of Beaumont v. Graham,* 441 S.W.2d 829, 834 (Tex.Sup.1969); *Halepeska v. Callihan Interests, Inc.,* 371 S.W.2d 368, 378 (Tex.Sup.1963).

In accordance with these general principles, Null alleged the Bridge Company was negligent by: 1) failing to inspect the stairway, 2) failing to warn Null of the dangerous condition of the stairway, and 3) failing to make the stairway safe for Null's use. This case does not fall within the general rules upon which Null relied.

A landowner is not an absolute insurer of the safety of all invitees on his premises. *McElhenny v. Thielepape,* 155 Tex. 319, 285 S.W.2d 940, 941 (1956). It is a well-established principle of law that any plaintiff, including an injured invitee, must prove the existence and violation of a legal duty owed to him by the defendant owner. *Abalos v. Oil Development Co. of Texas,* 544 S.W.2d 627, 631 (Tex.Sup.1976); *Coleman v. Hudson Gas & Oil Corp.,* 455 S.W.2d 701 (Tex.Sup.1970). Such a duty can only be determined by an examination of the facts and circumstances of each case, including an examination of the legal status of the parties involved.

The legal status of the parties here is clearly defined. The Bridge Company was the owner of the premises in question. Plaintiff Null, as an employee of a subcontractor performing work on the premises, was a business invitee. See *Smith v. Henger,* 148 Tex. 456, 226 S.W.2d 425, 431 (1950). The record demonstrates that Amigoland, the construction company and Castillo (the moving company) were independent contractors or subcontractors in their relationship to the Bridge Company. When determining whether an independent contractor relationship exists between a contractor and an owner, the test is not the question of actual exercise of control but the retention of the right to exercise control over the contractor's work. The status of an independent contractor is not destroyed, for instance, by sporadic acts of control. *Anchor Casualty Co. v. Hartsfield,* 390 S.W.2d 469 (Tex.Sup.1965). The undisputed evidence here is that the Bridge Company did not retain the right to control. It did not exercise control of either the manner in which, or the means by which, Amigoland, the construction company, Star Electric and

Null, or Castillo, the moving company, accomplished or managed their respective work on the premises. The respective contractors were directed only to the extent that the Bridge Company expected certain specified end results to occur. See *Pitchfork Land & Cattle Co. v. King,* 162 Tex. 331, 346 S.W.2d 598 (1961); *Great Western Drilling Co. v. Simmons,* 157 Tex. 268, 302 S.W.2d 400 (1957); *Industrial Indemnity Exchange v. Southard,* 138 Tex. 531, 160 S.W.2d 905, 907 (1942).

In this case, the dangerous condition to which Null was subjected was the existence of an inadequately supported stairway. This dangerous condition did not exist at the time the Bridge Company turned over its property to Amigoland or when Star Electric or its employee, Null, entered onto the premises. This condition occurred during the course of the moving operation by subcontractor Castillo when the building was lifted off of its foundation and the stairway was suspended in the air without its former means of support. The condition of the stairs occurred during the course of the actual moving work by the independent subcontractor, Castillo, and arose out of the performance of that work. The Bridge Company had no control over the details of such moving operation and did not attempt to control them. Amigoland assumed the responsibility for having the buildings moved and assumed control and direction of the premises. Null's accident occurred prior to the time Amigoland, and the subcontractors hired to complete the job, had returned control and occupation of the premises to the Bridge Company.

Plaintiff Null contends that the custom inspection station was an important source of revenue for the Bridge Company and that Amigoland's proposal to move the inspection station in accordance with its plans to connect the existing access road to the bridge with Amigoland's shopping center would provide additional economic benefits to the Bridge Company. Expected economic benefits is no evidence that the Bridge Company exercised control over the moving process. Null also argues that the

Bridge Company retained some control over the moving process because the Bridge Company insisted that the flow of traffic and the governmental operations would remain uninterrupted during the moving process. This is no more than a result expected during the course of the move, and in no way shows that the Bridge Company directed or controlled the moving process any more than the Bridge Company's desire to have the area kept in a lighted condition during the moving process shows control.

Section 422 of the Restatement of Torts 2d (1965) provides as follows:

"A possessor [1] of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or outside of the land for physical harm caused to them by the unsafe condition of the structure

a) while the possessor has retained possession of the land during the progress of the work, or

b) after he has resumed possession of the land upon its completion."

This section applies in favor of any person toward whom the possessor of land is under a duty with respect to the physical condition of the land. Restatement of Torts 2d (1965), comment (a). This section, however, has no application to injuries occurring while the land has been turned over to a contractor and he is in exclusive possession of it. "[W]here the employer moves out of his building and surrenders it to the contractor while it is undergoing construction, demolition, or repair, there is no liability [under this Section]." Comment (a). This section also contemplates that more than one contractor may be involved. See comment (d). Notwithstanding this section, a landowner may still be liable if the work is likely to be dangerous in the absence of special precautions (§ 416) or if the work is inherently dangerous (§ 427). The important thing is, however, that the landowner is not liable merely because of his ownership of the land, possession of which has been surrendered to the contractor. See comment (c) § 422, Restatement of Torts 2d (1965).

Here, the undisputed evidence established that the Bridge Company surrendered its possession and control to Amigoland. Amigoland assumed the responsibility to move the building. This it did by hiring Castillo to complete the actual move. Amigoland also caused Star Electric to be hired and assumed the entire cost of this project. The accident in question occurred after the Bridge Company vacated the premises, had moved across the street, and prior to the time the moving of the building had been completed.

We, therefore, hold that the Bridge Company had delegated any duty it might have had, to maintain the premises in a safe condition, by relinquishing its possession and control of the Customs building to Amigoland for Amigoland's purposes. There is nothing in the record to suggest that the Bridge Company negligently entrusted possession and control to Amigoland nor that the exceptions above mentioned stated in § 416 or § 427 of the Restatement of Torts are applicable. See *Brletich v. United States Steel Corporation*, 285 A.2d 133 (Pa. Sup.1971). Cf. *Robinson Sons, Inc. v. Ellis*, 412 S.W.2d 728 (Tex.Civ.App.—Amarillo 1967, writ ref'd n. r. e.).

In addition, the dangerous condition arose out of the work which Amigoland employed Castillo, the moving company, to do, and not out of any condition of the premises where the work was originally to be done. The Bridge Company was under no duty to warn Null of any transitory danger arising during the performance of

1. Section 328E of the Restatement of Torts 2d (1965) defines a "possessor of land" as: "a) a person who is in occupation of the land with intent to control it or b) a person who has been in occupation of land with intent to control it . . . or c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b)."

the various contractors' work. *Perez v. Hernandez,* 317 S.W.2d 81 (Tex.Civ.App.— San Antonio 1958, writ ref'd n. r. e.). The trial court, therefore, erred in the first instance in submitting issues to the jury pertaining to the Bridge Company's liability.

There is another reason to reverse the judgment of the trial court. Null was injured on June 30, 1970, more than three years prior to the effective date of the Texas comparative negligence statute, Tex. Rev.Civ.Stat.Ann. art. 2212a (Supp.1978). The doctrine of contributory negligence, therefore, governs Null's recovery against the Bridge Company and his recovery must be denied if his negligence was a proximate cause of the occurrence in question. See *General Motors Corp. v. Simmons,* 558 S.W.2d 855 (Tex.Sup.1977); *Abalos v. Oil Development Co. of Texas,* 544 S.W.2d 627 (Tex.Sup.1976); *Starr v. U. S.,* 393 F.Supp. 1359, 1365–66 (N.D.Tex.1975). The jury found that Null was negligent in using the stairs after the building was jacked up on railings and that such negligence was a proximate cause of his injuries. The trial court disregarded the jury's findings on these special issues. In point of error number eight, the Bridge Company contends that the trial court erred in disregarding the jury's answers to these special issues because there was evidence to support the jury's findings. We agree.

Null argues that he could not be negligent, as a matter of law, in using the stairway in question because the Bridge Company impliedly represented and warranted that the stairway in question was safe for his use. Null argues that the Bridge Company had a duty to warn him of any unsafe condition known to it or which could have been discovered by reasonable inspection and that he (Null) was entitled to presume that the Bridge Company would comply with this duty and that he (Null) was not required to search for defects. Our holding above precludes sustaining this contention.

While it is true that an invitee is not under the same duty to inspect as an owner or an occupier, the invitee is under a duty to act with reasonable care for his own safety under the circumstances. See *Smith v. Henger,* 148 Tex. 456, 226 S.W.2d 425, 434 (1950). The question of the plaintiff's contributory negligence is generally a question of fact for the jury's determination. *Triangle Motors of Dallas v. Richmond,* 152 Tex. 354, 258 S.W.2d 60, 63–64 (1953); *Blanks v. Southland Hotel, Inc.,* 229 S.W.2d 357, 360 (Tex.Sup.1950); *Smith v. Henger,* 148 Tex. 456, 226 S.W.2d 425, 434 (1950); *J. Weingarten, Inc. v. Brockman,* 134 Tex. 451, 135 S.W.2d 698, 699 (1940).

Null testified that no one directed him to use the stairway to obtain access to the roof in order to adjust the floodlights and that the choice to use the stairway was his own. Null testified that it would have been feasible to have obtained access to the roof by using a ladder. He also testified that he was aware that the building would be moved and that he had to coordinate his electrical work with the progress of the building movers. Null testified that he used the stairway prior to the time the building and the stairway had been jacked up off the foundation. At that time, the stairs were good and solid, Null said. Null admitted that he was on the job site daily and was generally aware that the condition of the building changed day by day as the moving work progressed. Null admitted that he was concerned for his own safety as well as that of his helper, and that he was interested in anything Castillo, the moving company, might do to weaken the building. It was undisputed that after the building was raised from its foundation, the stairway in question no longer rested upon the ground but was hanging in mid-air. It is further undisputed that Castillo removed the wooden braces which had, in part, supported the stairway. Null testified that he made no visual inspection of the stairs other than merely going up them and that he was not bothered by the fact that the "stairs were sort of hanging there." He admitted that the stairs seemed to be wobbly and shaky, and that no one else possessed better knowledge of the condition of the stairway than he did since no one else really used them. He further admitted that the stair-

way was open for his inspection and that nothing was concealed from him as to the true condition of the stairs. Null's helper, Vano, testified that the stairs were shaky and had, in his opinion, been weakened after the building had been raised.

Contributory negligence has been defined as the failure to use ordinary care to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances. Contributory negligence must be determined on a "reasonably prudent person standard" and requires an objective evaluation of a plaintiff's behavior. *Parker v. Highland Park, Inc.,* 565 S.W.2d 512, 520 (Tex.Sup.1978); *Farley v. M M Cattle Co.,* 529 S.W.2d 751, 758 (Tex.Sup.1975); *Halepeska v. Callihan Interests, Inc.,* 371 S.W.2d 368, 379 (Tex.Sup.1963). There is ample evidence in the record to support the jury's answer that Null was negligent in using the stairway after the building had been jacked up on railings. The trial court, therefore, erred in disregarding the jury's answer to this special issue.

We next consider whether there was any evidence to support the jury's answer that Null's negligence was the proximate cause of his injuries. Proximate cause embraces two distinct concepts: 1) cause in fact; and 2) foreseeability. Both of these elements must be present. *Farley v. M M Cattle Co.,* 529 S.W.2d 751, 755 (Tex.Sup.1975); *Clark v. Waggoner,* 452 S.W.2d 437 (Tex.Sup.1970); *Baumler v. Hazelwood,* 162 Tex. 361, 347 S.W.2d 560 (1961). The foreseeability of proximate cause is established by proof that the actor is a person of ordinary intelligence and prudence who should have anticipated the danger created by his negligent act. Foreseeability does not require that he anticipate just how the injuries will grow out of that dangerous situation. *Clark v. Waggoner,* 452 S.W.2d 437, 440 (Tex.Sup.1970); *Enloe v. Barfield,* 422 S.W.2d 905 (Tex.Sup.1967); *Biggers v. Continental Bus System,* 157 Tex. 351, 298 S.W.2d 79 (1956); 303 S.W.2d

359 (Tex.Sup.1957); *Ruiz v. Flexonics,* 517 S.W.2d 853 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.). The test is not what the wrongdoer believed would occur; it is whether he ought to have reasonably foreseen that the event in question, or some similar event, would occur. *Clark v. Waggoner,* 452 S.W.2d 437, 440 (Tex.Sup.1970). Null contends that the foreseeability element of proximate cause is lacking because he could not have reasonably foreseen that by merely using the stairway in question in the manner in which he did would produce his injuries. We do not agree.

Null was on the job daily and was in a position to observe the changes in the stairway which resulted from Castillo's work in preparing the building for its move and after the building had actually been moved. After the building had been lifted from its foundation, the stairway no longer rested on the ground. It was obvious that the wooden supports had been removed. Even if Null did not, for some reason, observe that the wooden supports had been removed, the dangerous condition had to be obvious to Null because the additional support the stairway received from sitting on the ground was not there. The jury reasonably concluded, we believe, that Null should have foreseen the danger inherent in using an outside stairway which was shaky, suspended in the air, and had no visible support other than somehow being attached to the side of the building and to the platform at the head of the stairway. Null should have anticipated the danger of adding additional weight to the stairway in this condition by his using the stairs and by allowing his helper to be on this stairway at the same time he started his descent. There is ample evidence to support the element of proximate cause. The Bridge Company's point of error eight is sustained.

Null, by way of cross-points, contends that the jury's answers to these special issues are not supported by sufficient evidence and the answers are against the great weight and preponderance of the evidence. We have carefully considered all of the evidence in the record. Null's cross-points

one through four are overruled. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

The judgment of the trial court is hereby REVERSED and judgment is here RENDERED that appellee Null take nothing.

## OPINION ON MOTION FOR REHEARING

Appellee Null and appellant Brownsville & Matamoros Bridge Company have each filed a motion for rehearing. Null's motion for rehearing contains thirty-three assignments of error with no argument and no authority. These assignments of error address contentions which this Court previously considered in its original opinion. The Bridge Company, however, contends that this Court failed to address its contention that it is entitled to reasonable attorney's fees from Amigoland.

The Bridge Company contends that its cross-action against Amigoland included an action for damages for attorney's fees and expenses for investigation based upon its contract with Amigoland. This specific contention was apparently addressed under point of error number 11 which, in essence, complains that the trial court erred in: 1) rendering any judgment against the Bridge Company; 2) in refusing to enter any judgment for indemnity and/or contribution in favor of the Bridge Company against Amigoland, "based on the evidence adduced at trial on the jury findings to special issues numbers 15, 16 and 17."

The indemnity provision contained in the contract between the Bridge Company and Amigoland provides as follows:

"It is also understood and agreed that Amigoland, Inc. will indemnify Brownsville & Matamoros Bridge Company for any damage to the above described buildings and facilities resulting from the relocation of the same and will indemnify Brownsville & Matamoros Bridge Company and hold it harmless from all liability and loss, including, but not limited to attorney's fees, court costs and expenses for investigation should any claims be asserted against it arising out of, result-ing from or in any manner connected with the proposed relocation of such buildings and facilities and the reconnection to said buildings when moved of all utilities of every character and will commit no lien to arise or be fixed against any of the properties of Brownsville & Matamoros Bridge Company."

On motion for rehearing, the Bridge Company, in effect, contends that this Court erred by failing to grant the Bridge Company's prayer for attorney's fees as presented by its point of error number 11. In support of this contention, the Bridge Company states that the "reasonableness of attorney's fees was stipulated in the amount $7,500.00 between counsel for Amigoland, Inc., and counsel for (the Bridge Company)."

Amigoland's position on appeal with regard to the Bridge Company's prompt action for indemnity was, in essence: 1) that the written contract between the parties was insufficient to indemnify the Bridge Company against the consequences of its own negligence; 2) that the Bridge Company was not entitled to indemnity under common law principles; and 3) that, pursuant to the terms of the parties' stipulation, the Bridge Company was not entitled to recover attorney's fees independently of its action for indemnity. These contentions must be considered as they relate to the posture of the case in accordance with our original opinion and the applicable principles of law.

As a general rule, an indemnity agreement will not protect the indemnitee against consequences such as its own negligence unless the obligation is expressed in unequivocable terms. The purpose of this general principle is to prevent unjustice. *Goodyear Tire and Rubber Company v. Jefferson Construction Company,* 565 S.W.2d 916, 919 (Tex.Sup.1978); *Spence & Howe Construction Co. v. Gulf Oil Corp.,* 365 S.W.2d 631, 634 (Tex.Sup.1963); *Fireman's Fund Ins. Co. v. Commercial Standard Ins. Co.,* 490 S.W.2d 818 (Tex.Sup.1972); *K & S Oil Well Service, Inc. v. Cabot Corp., Inc.,*

491 S.W.2d 733, 737 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n. r. e.).

In accordance with our original opinion, the Bridge Company (indemnitee) is not seeking indemnity for the consequences of its own negligence. Therefore, we do not need to determine whether the language of the indemnity provision quoted above comes within this general rule.

In *Ohio Oil Company v. Smith,* 365 S.W.2d 621, 627 (Tex.Sup.1963), our Supreme Court in considering the provisions of a general indemnity contract stated:

"It is the general rule of the law of contracts that where an unambiguous writing has been entered into between the parties, the courts, in construing that writing will give effect to the intention of the parties as expressed or apparent in the writing. In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls."

The intent of the parties must be ascertained from considering all of the provisions of the contract in light of the circumstances surrounding its execution. *Joe Adams & Son v. McCann Construction Co.,* 475 S.W.2d 721, 723 (Tex.Sup.1971). In this case, the parties and the trial court apparently considered the contract containing the provision in question to be unambiguous and its construction to be a question of law for the trial court. The contract was admitted as a "court's exhibit" to be considered only by the trial judge. The contract is in the record and we consider that it is properly before us for the purpose of construing its provisions.

The initial paragraph granted Amigoland permission to move the Bridge Company's buildings and facilities upon enumerated terms and conditions contained in the agreement. In considering the contract as a whole, it is evident that the parties in general intended that Amigoland would be solely responsible for 1) all direct and indirect costs incurred in moving the Bridge Company's buildings and facilities; and 2) all costs of providing temporary office facilities for the Bridge Company's tenants.

Paragraph 5 relates specifically to the general indemnity provisions. The first clause of paragraph 5 expressly states that Amigoland will indemnify the Bridge Company for any damages caused to the buildings and facilities resulting from the relocation process. The second clause provides that Amigoland "will indemnify (the Bridge Company) and hold it harmless from all *liability and loss* . . . should any claims be asserted against it arising out of, resulting from or in any manner connected with the proposed relocation of such buildings and facilities . . ." Paragraph 5 also specifically provides that "all liability and loss" shall include attorney's fees and expenses of an investigation. The question before this Court is whether or not the provisions of the contract, particularly those contained in paragraph 5, evidence an intent that attorney's fees and investigation expenses for a personal injury claim arising out of the relocation of the Bridge Company's buildings is within the purview of paragraph 5.

We conclude that it does. The contract as a whole evidences an intent that Amigoland was to control and to assume financial responsibility for the entire relocation process. Paragraph 5 is consistent with this general intent by providing, in effect, that Amigoland would indemnify and hold harmless the Bridge Company as to all liability and loss resulting from "*any claims*" asserted against the Bridge Company. This language is broad enough to include recovery for investigation expenses and attorney's fees incurred in defending a personal injury claim asserted against the Bridge Company. See *Ohio Oil Company v. Smith,* 365 S.W.2d 621, 627–628 (Tex.Sup.1966); *United States Fidelity & Guaranty Co. v. Paulk,* 15 S.W.2d 100, 105 (Tex.Civ.App.—Texarkana 1929, no writ); *Rothschild Co. v. Moore,* 166 S.W.2d 744, 745 (Tex.Civ.App.—Beaumont 1942, err. ref'd w. o. m.); 30 Tex.Jur.2d, § 26, Indemnity, (1962).

Brownsville & Matamoros Bridge Company's motion for rehearing is granted and judgment is here rendered that it have judgment for $7,500.00 as attorney's fees

with interest thereon from September 23, 1977.

The motion for rehearing for appellee Null is overruled.